

FILED

DEC 1 1 2008

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By:_____
Deputy Clerk

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA FOR
AN ORDER AUTHORIZING THE INTERCEPTION
OF WIRE COMMUNICATIONS

Case No. 08-MC-23-JHP

## MOTION FOR LEAVE TO DISCLOSE
## SEALED APPLICATIONS FOR WIRE INTERCEPTION

COMES NOW the United States of America, through Sheldon J. Sperling, United States

Attorney for the Eastern District of Oklahoma, and Rob Wallace, Assistant United States

Attorney, and moves this Honorable Court to allow the government to disclose the contents of

the applications for wire interception in the noted case numbers to United States Magistrate

Judge Steven P. Shreder. In support of its motion, the government alleges and states:

1.      The government has applied to this Court for and received from this Court the

following Title III wire intercepts:

| | | |
|---|---|---|
| a. | (918) 704-5940 | July 23, 2008 |
| b. | (918) 696-1755 | August 8, 2008 |
| | Extended | September 5, 2008 |
| | Extended | October 10, 2008 |
| c. | (918) 457-8398 | September 5, 2008 |
| | Extended | October 3, 2008 |
| d. | (918) 629-3876 | November 3, 2008 |
| e. | (270) 994-3072 | December 2, 2008 |

2.      Each of the intercept applications has been supported by an affidavit of Drug

Enforcement Administration (DEA) Special Agent Cory Hallum, DEA Tulsa Resident Agency.

3.      Each of the applications, orders and supporting materials have been filed with this

Court under seal and access to the matters has been strictly limited.



GOVERNMENT
EXHIBIT
E

4.      On December 5, 2008, and December 8, 2008, pleadings were presented to United States Magistrate Judge Steven P. Shreder seeking the issuance of a complaint and arrest warrants on **BOBBY FAIRCHILD, MICHAEL CASON, aka Mike Cason, RICHARD BURRIS, LOUIS MONTOYA, JIMMY SMITH, CALVIN HARVEY FRENCH, aka Harvey French,** and **ALFREDO GUZMAN,** for violations of Title 21, United States Code, Section 846. Magistrate Judge Shreder declined to find probable cause to issue the arrest warrants. The pleadings included an affidavit of DEA Special Agent Michael Rupe purporting to set forth probable cause to believe that the noted subjects had conspired to violate the federal drug law. The affidavit summarized portions of the above-listed wire intercept applications.

5.      The government intends to re-present the Application for a Criminal Complaint to Magistrate Judge Shreder. Permission to disclose the intercept applications as part of its Application for Criminal Complaint will allow Magistrate Judge Shreder access to the sealed documents without the necessity and burden to recreate such documents as part of the affidavit to support the complaint and arrest warrants.

6.      Extant investigative, operational and safety concerns regarding the unsealing and disclosure of the materials contained within the subject documents, operate to limit the scope of the requested disclosure to Magistrate Judge Shreder.

WHEREFORE, premises considered, the government respectfully prays this Honorable Court for permission to disclose the above-listed Applications for Wire Interception, including the attached Affidavits in Support, to Magistrate Judge Shreder.

SHELDON J. SPERLING
United States Attorney

ROB WALLACE, OBA #13130
Assistant United States Attorney

2

**FILED**

DEC – 2 2008

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By:_____
Deputy Clerk

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

)
**IN THE MATTER OF THE APPLICATION** )
**OF THE UNITED STATES OF AMERICA FOR** )
**AN ORDER AUTHORIZING THE INTERCEPTION** ) MC 08-023-**JHP**
**OF WIRE COMMUNICATIONS** )
)

### ORDER AUTHORIZING THE INTERCEPTION OF
### WIRE COMMUNICATIONS

Application under oath having been made before me by Rob Wallace, Assistant United States Attorney, Eastern District of Oklahoma, United States Department of Justice, an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and an attorney for the Government as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, for an Order authorizing the interception of wire communications pursuant to Section 2518 of Title 18, United States Code, and full consideration having been given to the matter set forth therein, the Court finds:

a.    there is probable cause to believe that Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown have committed, are committing, and will continue to commit offenses involving the importation and distribution of (and possession with intent to distribute) controlled substances; the use of wire facilities to facilitate the same; conspiracy to do the same and attempts to do the same, in violation of Title 21, United States Code, Sections 841, 843(b), 846, 952, 960 and 963; the laundering of monetary instruments being the proceeds from a specified unlawful activity and conspiracy to commit the same, in violation of Title 18, United States Code, Sections 1956 and/or 1957; interstate and foreign travel to promote, manage, establish, carry-on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity, to wit: an enterprise involving a controlled substance, in violation of Title 18, United States Code, Section 1952; possession of a firearm by prohibited person (felon), in violation of Title 18, United States Code, Section 922(g)(1); and possession of a firearm in furtherance of or in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c);

b.    there is probable cause to believe that particular wire communications of Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH,

Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WOLCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown concerning the above-described offenses will be obtained through the interception for which authorization is herein applied.  In particular, there is probable cause to believe that the communications to be intercepted will concern the telephone numbers of associates of  Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown communicate with their co-conspirators, aiders and abettors and other participants in the conspiracy, thereby identifying the co-conspirators and others as yet unknown, their places of operation, (etc.). In addition, these communications are expected to constitute admissible evidence of the above-described offenses;

c.      It has been established adequately that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ;

d.      there is probable cause to believe that the cellular telephone assigned telephone number (270) 994-3072, International Mobile Subscriber Identity (IMSI) 310410161764381, which is an AT&T cellular telephone, the subscriber to which is unknown, has been, is being and will continue to be used in connection with the commission of the above-described offenses.

WHEREFORE, IT IS HEREBY ORDERED that Special Agents of the Drug Enforcement Administration are authorized to intercept wire communications over the above-described facilities.

PROVIDED that such interception(s) shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which fully reveal the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty (30) days measured from the day on which investigative or law enforcement

2

officers first begin to conduct an interception under this Order or ten (10) days after this Order is entered, whichever is earlier.

IT IS ORDERED FURTHER that, pursuant to 18 U.S.C. § 2518(3), in the event that the target facility is transferred outside the territorial jurisdiction of this court, interceptions may take place in any other jurisdiction within the United States.

IT IS ORDERED FURTHER that, based upon the request of the Applicant pursuant to Section 2518(4) of Title 18, United States Code, AT&T Wireless, a communication service provider(s) as defined in Section 2510(15) of Title 18, United States Code, shall furnish, and continue to furnish, the Applicant and the investigative agency/agencies with all information, facilities, and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such provider(s) is according the persons whose communications are to be intercepted, with the service provider(s) to be compensated by the Applicant for reasonable expenses incurred in providing such facilities or assistance.

IT IS ORDERED FURTHER that, to avoid prejudice to the Government's criminal investigation, the above provider(s) of wire communication service and its agents and employees are ordered not to disclose or cause a disclosure of this Order or the request for information, facilities, and assistance by the Drug Enforcement Administration or the existence of the investigation to any person other than those of its agents and employees who require said information to accomplish the services hereby ordered. In particular, said provider(s) and its agents and employees shall not make such disclosure to a lessee, telephone or paging device subscriber or any interceptee or participant in the intercepted communications.

IT IS ORDERED FURTHER that this Order shall be executed as soon as practicable and that all monitoring of the wire communications shall be recorded and examined by the monitoring agents or attorneys to determine the relevance of the intercepted wire communications to the pending investigation and that the disclosure of the contents or nature of the wire communications intercepted be limited to those communications relevant to the pending investigation, in accordance with the minimization requirements of Chapter 119 of Title 18, United States Code. The interception of communications must terminate upon the attainment of the authorized objectives, not to exceed thirty (30) days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under this Order or ten (10) days after the Order is entered.

IT IS ORDERED FURTHER that Assistant United States Attorney Rob Wallace or any other Assistant United States Attorney familiar with the facts of this case shall provide this Court with a report on or about the tenth, twentieth and thirtieth days following the date of this Order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above-ordered reports should become due on a weekend or holiday, IT IS ORDERED FURTHER that such report shall become due on the next business day thereafter.

3

IT IS ORDERED FURTHER that this Order, the application, affidavit, and proposed Order(s), and all interim reports filed with this Court with regard to this matter shall be sealed until further order of this Court, except that copies of the Order(s), in full or redacted form, may be served on the Drug Enforcement Administration and the service provider(s) as necessary to effectuate this Order.

CHIEF JUDGE JAMES H. PAYNE
UNITED STATES DISTRICT COURT JUDGE
EASTERN DISTRICT OF OKLAHOMA

DATED this 2nd day of December, 2008.

4

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office
ATTEST
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
Eastern District of Oklahoma

By _____
Deputy Clerk
Dated _____

**FILED**

DEC - 2 2008

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By:_____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA FOR
AN ORDER AUTHORIZING THE INTERCEPTION
OF WIRE COMMUNICATIONS

)
)
)
)
)
)

MC 08-023-JHP

## APPLICATION FOR INTERCEPTION OF WIRE COMMUNICATIONS

Rob Wallace, Assistant United States Attorney, Eastern District of Oklahoma, United States Department of Justice, being duly sworn, states:

1.     I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an attorney authorized by law to prosecute or participate in the prosecution of United States federal felony offenses. I am also an attorney for the Government as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and, therefore, pursuant to Section 2516(3) of Title 18, United States Code, I am authorized to make an application to a Federal judge of competent jurisdiction for an order authorizing the interception of wire communications.

2.     Pursuant to Section 2516 of Title 18, United States Code, an appropriate official of the Criminal Division, United States Department of Justice, specifically David H. Hennessy, Acting Deputy Assistant Attorney General, Criminal Division, having been specially designated by the Attorney General pursuant to Order Number 2943-2008, dated January 22, 2008, has approved this application for an order authorizing the interception of wire communications. Attached to this application as Exhibit A, and incorporated by reference herein, is a copy of that order and the memorandum of authorization approving this application.

3.     This application is for an order pursuant to Section 2518 of Title 18, United States Code, authorizing the interception of wire communications for a thirty (30) day period of Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown to and from the cellular telephone assigned telephone number (270) 994-3072, International Mobile Subscriber Identity (IMSI) 310410161764381, which is an AT&T cellular telephone for which the subscriber is unknown, concerning federal felony offenses, that is, the importation and distribution of (and possession with intent to distribute) controlled substances; the use of wire

facilities to facilitate the same; conspiracy to do the same and attempts to do the same, in violation of Title 21, United States Code, Sections 841, 843(b), 846, 952, 960 and 963; the laundering of monetary instruments being the proceeds from a specified unlawful activity and conspiracy to commit the same, in violation of Title 18, United States Code, Sections 1956 and/or 1957; interstate and foreign travel to promote, manage, establish, carry-on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity, to wit: an enterprise involving a controlled substance, in violation of Title 18, United States Code, Section 1952; possession of a firearm by prohibited person (felon), in violation of Title 18, United States Code, Section 922(g)(1); and possession of a firearm in furtherance of or in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

      4.     I have discussed all of the circumstances of the above offenses with Special Agent Cory Hallum of the Drug Enforcement Administration, who has directed and conducted this investigation, and have examined the Affidavit of Special Agent Cory Hallum of this date (attached to this application as Exhibit B, and which is incorporated by reference). Whereof your applicant states upon information and belief that:

      a.     there is probable cause to believe that Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown have committed, are committing and will continue to commit offenses involving the importation and distribution of (and possession with intent to distribute) controlled substances; the use of wire facilities to facilitate the same; conspiracy to do the same and attempts to do the same, in violation of Title 21, United States Code, Sections 841, 843(b), 846, 952, 960 and 963; the laundering of monetary instruments being the proceeds from a specified unlawful activity and conspiracy to commit the same, in violation of Title 18, United States Code, Sections 1956 and/or 1957; interstate and foreign travel to promote, manage, establish, carry-on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity, to wit: an enterprise involving a controlled substance, in violation of Title 18, United States Code, Section 1952; possession of a firearm by prohibited person (felon), in violation of Title 18, United States Code, Section 922(g)(1); and possession of a firearm in furtherance of or in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

      b.     there is probable cause to believe that particular wire communications of Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT,

Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown concerning the above-described offenses will be obtained through the interception for which authorization is herein applied. In particular, there is probable cause to believe that the communications to be intercepted will concern the telephone numbers of associates of Bobby Fairchild, Jose Esparza and the dates, times and places for commission of the aforementioned federal felony offenses when Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS, and others as yet unknown communicate with their co-conspirators, aiders and abettors, and other participants in the conspiracy, thereby identifying the co-conspirators and aiders and abettors of Bobby Fairchild, Jose Esparza and others as yet unknown, and their places of operation. In addition, these communications are expected to constitute admissible evidence of the above-described offenses;

   c. normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ, as are described in further detail in the attached affidavit of Special Agent Cory Hallum; and

   d. there is probable cause to believe that cellular telephone assigned telephone number (270) 994-3072, International Mobile Subscriber Identity (IMSI) 310410161764381, which is an AT&T cellular telephone for which the subscriber is unknown, is being, and will continue to be used in connection with the commission of the above-described offenses.

  The attached affidavit contains a full and complete statement of facts concerning all previous applications that have been made to any judge of competent jurisdiction for authorization to intercept, or for approval of the interception of wire, oral or wire communications involving any of the same individuals, facilities, or places specified in this application.

  On the basis of the allegations contained in this application and on the basis of the attached affidavit of Special Agent Cory Hallum,

  IT IS HEREBY REQUESTED that this Court issue an order, pursuant to the power conferred on it by Section 2518 of Title 18, United States Code, authorizing the Drug

Enforcement Administration to intercept wire communications to and from the above-described cellular telephone, and providing that such interceptions not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but continue until all communications are intercepted which reveal fully the manner in which the above-named persons and others as yet unknown are committing the offenses described herein, and which reveal fully the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, for a period of thirty (30) days measured from the day on which investigative or law enforcement officers first begin to conduct an interception under this Court's order or ten (10) days after this order is entered, whichever is earlier.

IT IS REQUESTED FURTHER that in the event that the target facility is transferred outside the territorial jurisdiction of this Court, interceptions may take place in any other jurisdiction within the United States.

IT IS REQUESTED FURTHER that this Court issue an order pursuant to Section 2518(4) of Title 18, United States Code, directing that AT&T Wireless, a communication service provider as defined in Section 2510(15) of Title 18, United States Code, shall furnish, and continue to furnish, the applicant and investigative agency with all information, facilities and technical assistance necessary to accomplish the interceptions unobtrusively and with a minimum of interference with the services that such providers are according the persons whose communications are to be intercepted, and to ensure an effective and secure installation of electronic devices capable of interception of wire communications to and from the above-described cellular telephone, with the service provider to be compensated by the applicant for reasonable expenses incurred in providing such facilities or assistance.

IT IS REQUESTED FURTHER that, to avoid prejudice to this criminal investigation, the Court order the said providers of wire communication service and their agents and employees not to disclose or cause a disclosure of this Court's order or the request for information, facilities and assistance by the Drug Enforcement Administration or the existence of the investigation to any person other than those of their agents and employees who require said information to accomplish the services hereby requested. In particular, said providers and their agents and employees should be ordered not to make such disclosure to a lessee, telephone subscriber, or any interceptee or participant in the intercepted communications.

IT IS REQUESTED FURTHER that this Court direct that this order be executed as soon as practicable after it is signed and that all monitoring of communications shall be recorded and examined by monitoring agents or attorneys to determine the relevance of the intercepted wire communications to the pending investigation and that the disclosure of the contents or nature of the wire communications intercepted be limited to those communications relevant to the pending investigation, in accordance with the minimization requirements of Chapter 119 of Title 18, United States Code. The interception of communications authorized by this Court's order must terminate upon attainment of the authorized objectives or, in any event, at the end of thirty (30)

4

days measured from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under this Court's order or ten (10) days after the order is entered, whichever is earlier.

IT IS REQUESTED FURTHER that the Court order that either Assistant United States Attorney Rob Wallace, or any other Assistant United States Attorney familiar with the facts of this case, provide to the Court a report on or about the tenth, twentieth and thirtieth days following the date of this order showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the aforementioned reports should become due on a weekend or holiday, IT IS REQUESTED FURTHER that such report become due on the next business day thereafter.

IT IS REQUESTED FURTHER that the Court order that its orders, this application and the accompanying affidavit and proposed order(s), and all interim reports filed with the Court with regard to this matter be sealed until further order of this Court, except that copies of the order(s), in full or redacted form, may be served on the Drug Enforcement Administration and the service provider(s) as necessary to effectuate the Court's order as set forth in the proposed order(s) accompanying this application.

DATED this 2nd day of December, 2008.

ROB WALLACE
Assistant United States Attorney

SUBSCRIBED and SWORN to before me this 2nd day of December, 2008.

JAMES H. PAYNE
UNITED STATES DISTRICT COURT JUDGE
EASTERN DISTRICT OF OKLAHOMA

5



**U.S. Department of Justice**

Criminal Division

_Washington, D.C. 20530_

**MEMORANDUM**

DEC - 2 2008

TO:    Maureen H. Killion, Director
        Office of Enforcement Operations
        Criminal Division

ATTN:   Rob Wallace

FROM:  Matthew W. Friedrich
        Acting Assistant Attorney General
        Criminal Division

SUBJECT:  Authorization for Interception Order Application

    This is with regard to your recommendation that an appropriately designated official of the Criminal Division authorize an application to a federal judge of competent jurisdiction for an order under Title 18, United States Code, Section 2518, authorizing for a thirty (30) day period, the interception of wire communications occurring to and from the cellular telephone bearing the number (270) 994-3072, with no subscriber information, and accessed through International Mobile Subscriber Identity ("IMSI") number 310410161764381, in connection with an investigation into possible violations of Title 18, United States Code, Sections 922, 924, 1952, 1956, and 1957; and Title 21, United States Code, Sections 841, 843, 846, 952, 960, and 963, by Bobby Fairchild, Jose Esparza, Alfredo Guzman, Calvin French, Rhonda Valdivia, Kevin Joe Wolcott, Joseph McKinley Wolcott, Jeremy Stewart, Jimmy Smith, Richard Burris, Chris Shelton, Deborah Green, Jose Sevilla, Jimmy Gower, Maria Alcantara, Alejandro Perez, Luis Gonzales, Angela Buhmester, Michael Sheets, Steve Tankersley, Stephen Turley, Tony Villalobos, Gene Brown, Josh Duke, Antonio Ortiz, Danny Houston, Tommy Kilgore, Melinda Fairchild, Johnny Willis, and other persons as yet unknown.

    By virtue of the authority vested in the Attorney General by Section 2516 of Title 18, United States Code, the Attorney General of the United States has by Order Number 2943-2008, dated January 22, 2008, designated specific officials in the Criminal Division to authorize applications for court orders authorizing the interception of wire and oral communications. As a duly designated official in the Criminal Division, this power is


GOVERNMENT EXHIBIT "A"

exercisable by the undersigned.  WHEREFORE, acting under this delegated power, the appropriately designated official authorizes the above-described application to be made by any investigative or law enforcement officer of the United States as defined in Section 2510(7) of Title 18, United States Code.

The authorization given is intended to apply not only to the target telephone number listed above, but also to any other telephone number or telephone accessed through the above-referenced IMSI number, and to any other IMSI number accessed through the target telephone number referenced above, within the thirty day period.  The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

_____
Matthew W. Friedrich
Acting Assistant Attorney General
Criminal Division

DEC − 2 2008
_____
Date

David H. Hennessy
Acting Deputy Assistant Attorney General
Criminal Division



# Office of the Attorney General
### Washington, D.C. 20530

ORDER NO.  2943-2008

SPECIAL DESIGNATION OF CERTAIN OFFICIALS OF THE CRIMINAL DIVISION AND
NATIONAL SECURITY DIVISION TO AUTHORIZE APPLICATIONS FOR COURT
ORDERS FOR INTERCEPTION OF WIRE OR ORAL COMMUNICATIONS

By virtue of the authority vested in me as the Attorney General, including 28 U.S.C. § 510, 5 U.S.C. § 301, and 18 U.S.C. § 2516(1), the following officials are hereby specially designated to exercise the power conferred by section 2516(1) of title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing or approving the interception of wire and oral communications by the Federal Bureau of Investigation or Federal agency having responsibility for the investigation of the offense(s) as to which such application is made, when such interception may provide evidence of any of the offenses specified in section 2516 of title 18, United States Code:

1.   The Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant Attorney General of the Criminal Division, and any Acting Deputy Assistant Attorney General of the Criminal Division;

2.   The Assistant Attorney General for National Security, any Acting Assistant Attorney General for National Security, any Deputy Assistant Attorney General for National Security, and any Acting Deputy Assistant Attorney General for National Security, with respect to those matters delegated to the supervision and responsibility of the Assistant Attorney General for National Security.  These officials of the National Security Division shall exercise this authority through, and in full coordination with, the Office of Enforcement Operations within the Criminal Division.

Attorney General Order No. 2887-2007 of July 3, 2007, is revoked effective at 11:59 p.m. of the day following the date of this order.

__January 22, 2008__
Date

_____
Michael B. Mukasey
Attorney General



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

---

*Maureen H. Killion, Director*                                    *Washington, D.C. 20005*

# Title III Implementation Information

In connection with the concomitantly transmitted documents approving your request to apply for a court order authorizing an interception pursuant to Title III, we would like to advise you of the following so that you might avoid issues in these areas:

**Pending Charges / Privileged Communications** - Monitoring personnel must exercise care to avoid intercepting communications of persons under indictment that may pertain to any such person's culpability in relation to the indictment, or the strategy that they contemplate employing as a defense, or communications involving a recognized privilege, e.g. doctor-patient. If such a communication is overheard inadvertently, monitoring personnel are to make notation of the incident in the intercept log and make an immediate report to the attorney who is supervising the interception.

**Sealing** - It is the obligation of the supervising attorney to ensure that the tapes of the intercepted conversations are protected adequately, and that these tapes are sealed by the court on a regular basis, preferably at the end of each 30-day period, if the interception is authorized to continue beyond the initial 30-day period. If there is a break in the interception period, this attorney should ensure that the tapes are sealed by the court as soon as practicable thereafter.

**Computation of the 30-Day Period** - Because of conflicting court decisions regarding the counting of the 30-day period for purposes of Title III interceptions, the supervising attorney should ensure that the method of computing time is set forth in the court's order and made known to monitoring personnel. *See, e.g., United States* v. *Gangi*, 33 F.Supp.2d 303 (S.D.N.Y. 1999) (counting calendar days rather than 24-hour periods, unless order provides otherwise), and *United States* v. *Smith*, 223 F.3rd 554, at 575 (7th Cir. 2000) (Fed.R.Crim.P. 45, minus weekend and holiday exception, applies). Notwithstanding the method used, communications should not be intercepted for longer than a strict counting of 30 days.

**Extensions** - All extensions **MUST** be approved by the Criminal Division before they are filed with the court.

**Reporting** - Section 2519 of Title 18, United States Code, requires that the Attorney General make an annual report to the Administrative Office of the United States Courts (AOUSC) each year regarding electronic surveillance by a federal agency under Title III. The statute requires you, through your investigative agency, to report specific post surveillance information, i.e., the number of resulting trials, the number of motions to suppress, whether the motions were granted or denied, and the number of convictions. These reports are compiled by AOUSC and provided to Congress and the public.

OEO's Electronic Surveillance Unit (ESU) can be reached at (202) 514-6809. Requests for surveillance authorized under T-III must be submitted to ESU by email through ESU.Requests@usdoj.gov or through our FAX-to-email server on (803) 726-2180.



**FILED**

DEC - 2 2008

**WILLIAM B. GUTHRIE**
Clerk, U.S. District Court
By:_____
Deputy Clerk

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE )
APPLICATION OF THE UNITED )
STATES OF AMERICA FOR AN ORDER )
AUTHORIZING THE INTERCEPTION )
OF WIRE COMMUNICATIONS ) MC 08-023-**JHP**
TO AND FROM AT&T WIRELESS )
TELEPHONE NUMBERS **(270) 994-3072** )
IMSI: 310410161764381 )
IMEI/ESN: 011424003891503 )

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR WIRE INTERCEPTION

### INTRODUCTION

1.      Affiant, Cory Hallum, Special Agent, U.S. Department of Justice, Drug
Enforcement Administration, being duly sworn under oath, states as follows:

2.      I, Cory Hallum, am an investigative or law enforcement officer within the
meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United
States who is empowered by law to conduct investigations of, and to make arrests for, offenses
enumerated in Section 2516 of Title 18, United States Code.

3.      I am currently employed as a Special Agent with the Drug Enforcement
Administration (DEA) and have been so employed since 1998. In February 1999, I was
temporarily assigned to the Oklahoma City District Office. In May 1999, I reported to the
Houston Field Division, Corpus Christi Resident Office, at which time I was assigned to the
High Intensity Drug Trafficking Area (HIDTA) group. I remained an active member of the
HIDTA group until 2002 when I was transferred to Enforcement Group One. In June 2006, I
was transferred to the Tulsa Resident Office where I am currently assigned to the HIDTA group.

1



GOVERNMENT
EXHIBIT
5

4.      Since becoming a Special Agent with DEA, I have conducted investigations of unlawful drug distribution in violation of Title 21, United States Code, Sections 841, 843 and 846, and have participated in wire and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records.   Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored and distributed and the methods of payment for such drugs.   I have received numerous hours of training from various federal, state and local law enforcement agencies.

5.      As a Special Agent, I have initiated more than 85 DEA cases.   These cases have lead to the arrest and indictment of more than 135 defendants, the successful seizure of more than 37,000 pounds of marijuana, more than 1,140 pounds of cocaine and more than 125 pounds of methamphetamine.   In addition to being the Lead Case Agent in more than 85 DEA investigations, I have assisted with more than 1,000 drug trafficking investigations.

6.      I have authored Affidavits for Title III investigations and search warrants.   I have participated in an undercover capacity for the purchase, distribution and trafficking of illegal substances.   I have executed numerous controlled deliveries of narcotics.   I have gained a considerable amount of knowledge through my training and experience.   I have interviewed hundreds of defendants involved in the use, manufacture, transportation and illegal sale of controlled dangerous substances.   During the course of these interviews, I have inquired and learned how individuals involved in drug distribution schemes and networks use and disperse the illegal proceeds generated by the illegal sale of controlled dangerous substances, including, but not limited to, chemicals commonly utilized in the illegal manufacture of methamphetamine. During the course of my training and interviews with various defendants, I have learned how

2

individuals involved in drug distribution schemes maintain records and conspire to deceive law enforcement as well as rival distributors of controlled dangerous substances. I have learned how individuals that are involved in these types of crimes maintain records and secret monies gained as a result of participation in illegal drug distribution networks. The information contained in this affidavit is known to me personally or was learned from other Officers or Agents and by reviewing reports and documents.

7.     I submit this affidavit in support of an application for an order pursuant to Section 2518 of Title 18, United States Code, authorizing the interception and recording of wire communications occurring over **TARGET TELEPHONE #5,** assigned telephone number (270) 994-3072, International Mobile Subscriber Identity (IMSI) 310410161764381[1], with service provided by AT&T Wireless, and any telephone numbers subsequently assigned to or accessed by the instruments bearing the same IMSI as the **TARGET TELEPHONE #5,** as well as any IMSI subsequently assigned to the instrument bearing the same telephone number assigned to **TARGET TELEPHONE #5** concerning offenses enumerated in Section 2516 of Title 18, United States Code, that is, offenses involving the importation and distribution of (and possession with intent to distribute) controlled substances; the use of wire facilities to facilitate the same; conspiracy to do the same and attempts to do the same, in violation of Title 21, United States Code, Sections 841, 843(b), 846, 952, 960 and 963; the laundering of monetary instruments being the proceeds from a specified unlawful activity and conspiracy to commit the same, in violation of Title 18, United States Code, Sections 1956 and/or 1957; interstate and foreign travel to promote, manage, establish, carry-on, or facilitate the promotion, management,

---

[1] The International Mobile Subscriber Identification (IMSI) number is encoded on a computer chip within the **TARGET TELEPHONE.** The chip can be removed and inserted into any similarly equipped telephone and be used to operate that telephone. The IMSI is unique to the subscriber and cannot be changed. Accordingly, the DEA is seeking authorization to intercept wire communications over any telephones or telephone numbers accessed by or through the IMSI number noted above.

establishment, or carrying on of an unlawful activity, to wit: an enterprise involving a controlled substance, in violation of Title 18, United States Code, Section 1952; possession of a firearm by prohibited person (felon), in violation of Title 18, United States Code, Section 922(g)(1); and possession of a firearm during and in relation to or in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

8.      I submit that there is probable cause to believe that these offenses have been committed, are being committed and will continue to be committed by persons who are the subjects of this investigation, including, among others Bobby FAIRCHILD, Jose ESPARZA, Alfredo GUZMAN, Calvin FRENCH a/k/a Harvey FRENCH, Rhonda VALDIVIA, Kevin Joe WOLCOTT, Joseph McKinley WOLCOTT a/k/a Joseph McKinley WALCOTT a/k/a Joe WOLCOTT a/k/a Joe WALCOTT a/k/a WILDCAT, Jeremy STEWART, Jimmy SMITH, Richard BURRIS, Chris SHELTON, Deborah GREEN, Jose SEVILLA, Jimmy GOWER, Maria ALCANTARA, Alejandro PEREZ, Luis GONZALES, Angela BUHMESTER, Michael SHEETS, Steve TANKERSLEY, Stephen TURLEY, Tony VILLALOBOS, Gene BROWN, Josh DUKE, Antonio ORTIZ, Danny HOUSTON, Tommy KILGORE, Melinda FAIRCHILD, Johnny WILLIS and others as yet unidentified **(TARGET VIOLATORS)**.

9.      The requested Order is sought for a period of time until the requested interceptions fully reveal the identity of and manner in which the **TARGET VIOLATORS** engage in the above-described offenses, or for a period of thirty (30) days, whichever occurs first, pursuant to Title 18, United States Code, Section 2518(5). Pursuant to Section 2518(5) of Title 18, United States Code, it is further requested that the 30-day period be measured from the date on which a law enforcement agent first begins to conduct the interception under the court order or ten days after the order is entered whichever is earlier.

4

10.    This case is being investigated by the DEA in Tulsa, Oklahoma; El Paso, Texas; Denver, Colorado; Nashville, Tennessee; London, Kentucky; Las Cruces, New Mexico, and by the Oklahoma Bureau of Narcotics and Dangerous Drugs. The contents of this affidavit are based upon my personal participation in this investigation, reports made to me by other DEA agents and law enforcement authorities and information provided by confidential sources discussed in more detail below. Except where otherwise noted, the information set forth in this affidavit has been provided to me by other law enforcement agents who have assisted in the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement was made by other law enforcement officers (who may have had either direct or hearsay knowledge of that statement) to whom I or other law enforcement officers have spoken or whose reports I have read and reviewed. Such statements are reported in substance and in part, unless otherwise indicated. Likewise, information resulting from surveillance sets forth either my personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance.

11.    Since this affidavit is being submitted for the limited purpose of securing an order authorizing the interception of wire communications, I have not included details of every aspect of this investigation. Facts not set forth herein are not being relied on in reaching my conclusion that an order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application for an order authorizing the interception of wire communications. Where I have described conversations, I have described them in substance and in part, and not verbatim. Unless otherwise indicated, the information I have set forth herein is based on information I have gained from reports written by other agents and officers, and discussion with other agents and officers.

5

## SUBJECTS AND OFFENSES

12.     This application is based upon an investigation of a drug trafficking group involved with the importation of multi-kilogram quantities of methamphetamine, cocaine and marijuana from Mexico to the United States, and with the distribution of these substances in several states within the United States.

13.     As discussed below, there is probable cause to believe that the **TARGET VIOLATORS** have committed, are committing and will continue to commit the following offenses: the importation and distribution of (and possession with intent to distribute) controlled substances; the use of wire facilities to facilitate the same; conspiracy to do the same and attempts to do the same, in violation of Title 21, United States Code, Sections 841, 843(b), 846, 952, 960 and 963; the laundering of monetary instruments being the proceeds from a specified unlawful activity and conspiracy to commit the same, in violation of Title 18, United States Code, Sections 1956 and/or 1957; interstate and foreign travel to promote, manage, establish, carry-on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity, to wit: an enterprise involving a controlled substance, in violation of Title 18, United States Code, Section 1952; possession of a firearm by prohibited person (felon), in violation of Title 18, United States Code, Section 922(g)(1); and possession of a firearm in furtherance of or in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c). **(TARGET OFFENSES).**

## THE DESIGNATED CELLULAR TELEPHONES

14.     There is probable cause to believe that the **TARGET VIOLATORS** of this investigation are also the **TARGET INTERCEPTEES** and are using and will in the future use **TARGET TELEPHONE #5,** assigned telephone number (270) 994-3072, International Mobile

Subscriber Identity (IMSI) 310410161764381, which is an AT&T prepaid cellular telephone distributed by Tracfone. Due to the fact **TARGET TELEPHONE #5** is a prepaid cellular telephone, the subscriber is unknown. Service was established with AT&T on September 2, 2008. **TARGET TELEPHONE #5** is being used to facilitate, accomplish and to commit the above-described **TARGET OFFENSES.**

15.    There is probable cause to believe that **TARGET TELEPHONE #5** will be used during the period of interception applied for herein by the **TARGET INTERCEPTEES,** Bobby FAIRCHILD and others not yet identified in order to accomplish, to discuss and to commit the **TARGET OFFENSES.**

16.    I have been informed by other law enforcement personnel who are familiar with applicable telephone technology that a "portable cellular telephone" (or a mobile telephone) can be used both within a vehicle and outside a vehicle through the use of a portable battery pack. The cellular telephone system divides Oklahoma and other areas into small coverage areas, which are called cells. As a vehicle in which a portable cellular telephone is located or the cellular telephone itself is moved from one cell to another, transmitters within each cell and a master switching network permit wire communications to be completed. Each portable cellular telephone that does not contain party lines bears a unique International Mobile Subscriber Identification (IMSI) and an assigned telephone number. It is requested that interception be permitted over any changed telephone numbers subsequently assigned to the instrument with the above listed IMSI for **TARGET TELEPHONE #5.**

17.    It is anticipated that the **TARGET INTERCEPTEES** will use **TARGET TELEPHONE #5** to place calls to other telephones to and from the Eastern District of Oklahoma, as well as other locations. This belief is supported by the facts described below.

7

18.     In any event, pursuant to <u>United States v. Rodriquez</u>, 968 F.2d 130 (2d Cir.), <u>cert.</u> <u>denied</u>, 506 U.S. 847 (1992), a Court in the Eastern District of Oklahoma is empowered to issue an Order for the interception of wire communications over telephones located in other districts.

19.     In connection with the telecommunication company which provides the service for **TARGET TELEPHONE #5,** all interceptions over **TARGET TELEPHONE #5** will automatically be routed to Dallas, Texas, regardless of where the telephone calls originate or terminate. The intercepted telephone calls will be monitored by the DEA Dallas Field Division (DEA/DFD) located in Dallas, Texas. This remote monitoring is necessary due to the needed technical expertise, equipment and personnel which are available at DEA/DFD. DEA/DFD is located within the Northern District of Texas. During the requested wire surveillance, all monitoring will be performed in Dallas, Texas, by law enforcement officers authorized under Section 2510(7) of Title 18, United States Code, including law enforcement officers with the DEA and Government employees or individuals operating under a contract with the Government, including, if necessary, translators, who will be acting under the supervision of investigative or law enforcement officers authorized to conduct the interception, and specifically under the supervision of law enforcement officers from the DEA. The intercepted telephone calls may further be transmitted to the DEA Tulsa Resident Office located in Tulsa, Oklahoma.

20.     Because of the mobility of portable cellular telephones, pursuant to Title 18, United States Code, Section 2518(3), authorization is requested for interception of wire communications both within the Eastern District of Oklahoma, and, in the event that **TARGET TELEPHONE #5** is transferred outside the jurisdiction of this Court, in any other jurisdiction within the United States. In addition, it is requested that background conversations, in the

vicinity of **TARGET TELEPHONE #5** while it is off the hook or otherwise in use, also be permitted to be intercepted.

## OBJECTIVES

21.     There is probable cause to believe that the interception of wire communications, the authorization for which is sought herein, will help to reveal: (i) the nature, extent and methods of operation of the controlled substances activities of the **TARGET INTERCEPTEES**; (ii) the identities of the **TARGET INTERCEPTEES**, their accomplices, aiders, abettors, co-conspirators, and participants in their illegal activities; (iii) the source, receipt, and distribution of controlled substances, contraband, and money involved in those activities; (iv) the locations and items used in furtherance of those activities; (v) the existence and locations of records; (vi) the locations and sources of resources used to finance their illegal activities, and (vii) the locations and disposition of the proceeds from those activities.   In addition, these wire communications are expected to constitute admissible evidence of the commission of the above-described offenses.

## PRIOR APPLICATIONS

22.     Based upon ELSUR (electronic surveillance) record checks of the DEA, ICE and FBI indices, on November 18, 2008, there have been no other federal applications for an order authorizing or approving the interception of wire, oral or electronic communications of **TARGET TELEPHONE #5** or of the **TARGET INTERCEPTEES** specified in this affidavit, except for those listed below.

23.     On November 28, 2008, United States District Judge Karen Caldwell, in the Eastern District of Kentucky, authorized the interception of wire communications occurring over **KENTUCKY'S TARGET TELEPHONE #1** (telephone number (606) 213-1598, ESN

9

268435457402621053). The following individuals were listed in the application as Target Interceptees/Subjects of the investigation: (1) Jeremy Stewart, (2) Bobby Fairchild, (3) Alfredo Guzman, (4) Cathy White, (5) Homer Smallwood, (6) Audy Stewart, (7) Lavon Tackett, (8) Darren LNU, (9) Mark LNU, (10) Jimmy Smith, (11) Danny White, (12) Paul Sneed, (13) Michael Wayne Fleming, (14) Steve LNU, (15) Griz LNU, (16) Diane Stewart, (17) Kathy Sneed, (18) Jamie LNU, (19) Brian LNU.

24.    On November 3, 2008, United States District Judge James H. Payne, in the Eastern District of Oklahoma, authorized the continued interception of wire communications occurring over **TARGET TELEPHONE #4** (telephone number (918) 629-3876, IMSI: 310410212273837).   The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bobby FAIRCHILD; (2) Jose ESPARZA; (3) Alfredo Guzman; (4) Harvey French; (5) Rhonda Valdivia; (6) Kevin Wolcott, a/k/a Kevin Joe WOLCOTT; (7) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley WALCOTT, a/k/a Joe WOLCOTT, a/k/a Joe WALCOTT, a/k/a WILDCAT; (8) Jeremy STEWART; (9) Jimmy SMITH; (10) Richard BURRIS; (11) Chris SHELTON; (12) Deborah GREEN; (13) Jose SEVILLA; (14) Jimmy GOWER; (15) Maria ALCANTARA; (16) Alejandro PEREZ; (17) Luis GONZALES; (18) Angela BUHMESTER; (19) Michael SHEETS; (20) Steve TANKERSLEY; (21) Stephen TURLEY; (22) Tony VILLALOBOS; (23) Gene BROWN; (24) Josh DUKE; (25) Antonio ORTIZ; (26) Danny HOUSTON; (27) Tommy KILGORE; (28) Melinda FAIRCHILD and (29) Johnny WILLIS.

25.    On October 28, 2008, United States District Judge Karen Caldwell, in the Eastern District of Kentucky, authorized the interception of wire communications occurring over **KENTUCKY'S TARGET TELEPHONE #1** (telephone number (606) 213-1598, ESN

10

268435457402621053) and **KENTUCKY'S TARGET TELEPHONE #2** (606) 634-9921, ESN 802558879. The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jeremy STEWART; (2) Bobby FAIRCHILD; (3) Alfredo GUZMAN; (4) Cathy WHITE; (5) Homer SMALLWOOD; (6) Audy STEWART; (7) Lavon TACKETT; (8) Darren LNU; (9) Mark LNU; (10) Jimmy SMITH.

26. On October 10, 2008, United States District Judge James H. Payne, in the Eastern District of Oklahoma, authorized the continued interception of wire communications occurring over **TARGET TELEPHONE #2** (telephone number (918) 696-1755, IMSI: 310410182378968 and IMEI/ESN: 355768013462026). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bobby FAIRCHILD; (2) Jose ESPARZA; (3) Alfredo GUZMAN; (4) Harvey FRENCH; (5) Rhonda VALDIVIA; (6) Kevin WOLCOTT, a/k/a Kevin Joe WOLCOTT; (7) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley WALCOTT, a/k/a Joe WOLCOTT, a/k/a Joe WALCOTT, a/k/a WILDCAT; (8) Jeremy STEWART; (9) Jimmy SMITH; (10) Richard BURRIS; (11) Chris SHELTON; (12) Deborah GREEN; (13) Jose SEVILLA; (14) Jimmy GOWER; (15) Maria ALCANTARA; (16) Alejandro PEREZ; (17) Luis GONZALES; (18) Angela BUHMESTER; (19) Michael SHEETS; (20) Steve TANKERSLEY; (21) Stephen TURLEY; (22) Tony VILLALOBOS; (23) Gene BROWN; (24) Josh DUKE; (25) Antonio ORTIZ; (26) Danny HOUSTON; (27) Tommy KILGORE; (28) Melinda FAIRCHILD and (29) Johnny WILLIS.

27. On October 3, 2008, United States District Judge James H. Payne, in the Eastern District of Oklahoma, authorized the continued interception of wire communications occurring over **TARGET TELEPHONE #3** (telephone number (918) 457-8368, IMSI: 310410211638544). The following individuals were listed in the application as TARGET

11

INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bobby FAIRCHILD; (2) Jose

ESPARZA; (3) Alfredo Guzman; (4) Harvey French; (5) Rhonda Valdivia; (6) Kevin Wolcott,

a/k/a Kevin Joe WOLCOTT; (7) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley

WALCOTT, a/k/a Joe WOLCOTT, a/k/a Joe WALCOTT, a/k/a WILDCAT; (8) Jeremy

STEWART; (9) Jimmy SMITH; (10) Richard BURRIS; (11) Chris SHELTON; (12) Deborah

GREEN; (13) Jose SEVILLA; (14) Jimmy GOWER; (15) Maria ALCANTARA; (16) Alejandro

PEREZ; (17) Luis GONZALES; (18) Angela BUHMESTER; (19) Michael SHEETS; (20) Steve

TANKERSLEY; (21) Stephen TURLEY; (22) Tony VILLALOBOS; (23) Gene BROWN; (24)

Josh DUKE; (25) Antonio ORTIZ; (26) Danny HOUSTON; (27) Tommy KILGORE; (28)

Melinda FAIRCHILD and (29) Johnny WILLIS.

28.    On September 27, 2008, United States District Judge David Briones, of the

Western District of Texas, authorized the original interception of wire communications occurring

over **EL PASO'S TARGET TELEPHONE #8** (telephone number (915) 443-6703, ISMI

Number 316010159203590).    The following individuals were listed in the application as

TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis

TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda

MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio

RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo

MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El

Jefe" and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis

GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA; (17) Beto LNU; (18)

Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21)

Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez GARCIA, a.k.a.

12

"Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA; (44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy LNU; (53) Santos CHAVEZ, Jr., a.k.a Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18; (56) FNU LNU-19; (57) Meño LNU; (58) Patricia MORALES, a.k.a. Patty; (59) Carlos Ramon CARRILLO, a.k.a. Carlos LNU-3; (60) FNU LNU-20; (61) Jose Angel ESPARZA, a.k.a. FNU LNU-21, "El Perro," "El Perrillo," and "El Pelon;" (62) FNU LNU-22; (63) Oscar Rene RONQUILLO-Dominguez; (64) Rosa GUEVARA. a.k.a. Rosa RONQUILLO; (65) Daniel James SHAW; (66) Benny RAMOS, a.k.a. Benito Bosque RAMOS; (67) Juan Antonio TERRAZAS; (68) Edgar MAGALLANES-Cardenas; (69) Bobby FAIRCHILD; (70) Santiago Humberto PEREZ-Piñon; (71) Michael James FRERES; (72) Hugo CHAVEZ; (73) Memo LNU; (74) FNU LNU-23; (75) Donna Denise FRERES; (76) FNU LNU-24; (77) FNU LNU-25 and others yet unknown or unidentified.

     29.     On September 12, 2008, United States District Judge Todd J. Campbell, in the Middle District of Tennessee, authorized the continued interception of wire communications occurring over **TENNESSEE'S TARGET TELEPHONE #2** (telephone number (931) 248-2967, IMSI 31041014489504. The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bruce FERGUSON; (2) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley WALCOTT, a/k/a Joe WOLCOTT,

a/k/a Joe WALCOTT, a/k/a WILDCAT; (3) Jeffery Lynn COPAS, a/k/a Jeffery Lyn COPAS, a/k/a TERMITE; (4) Jerry Hale GLASS; (5) Kevin Joe WOLCOTT and (6) Calvin Eugene DAVIS; (7) Calvin FRENCH, a/k/a  Harvey FRENCH; (8) Randall B. WILLIAMS, a/k/a Randy; (9) Jim LNU; (10) Cliff DURARD; (11) Binx LNU; (12) Tonya McKinney BREAUX; (13) Clint LNU and (14) Bobby FAIRCHILD.

30.    On September 5, 2008, United States District Judge James H. Payne, in the Eastern District of Oklahoma, authorized the interception of wire communications occurring over **TARGET TELEPHONE #3** (telephone number (918) 457-8368, IMSI: 310410211638544) and the continued interception of wire communications occurring over **TARGET TELEPHONE #2** (telephone number (918) 696-1755, IMSI: 310410182378968 and IMEI/ESN: 355768013462026).  The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bobby FAIRCHILD; (2) Jose ESPARZA; (3) Alfredo GUZMAN; (4) Harvey FRENCH; (5) Rhonda VALDIVIA; (6) Kevin WOLCOTT, a/k/a Kevin Joe WOLCOTT; (7) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley WALCOTT, a/k/a Joe WOLCOTT, a/k/a Joe WALCOTT, a/k/a WILDCAT; (8) Jeremy STEWART; (9) Jimmy SMITH; (10) Richard BURRIS; (11) Chris SHELTON; (12) Deborah GREEN; (13) Jose SEVILLA; (14) Jimmy GOWER; (15) Maria ALCANTARA; (16) Alejandro PEREZ; (17) Luis GONZALES; (18) Angela BUHMESTER; (19) Michael SHEETS; (20) Steve TANKERSLEY; (21) Stephen TURLEY; (22) Tony VILLALOBOS; (23) Gene BROWN; (24) Josh DUKE; (25) Antonio ORTIZ; (26) Danny HOUSTON; (27) Tommy KILGORE; (28) Melinda FAIRCHILD and (29) Johnny WILLIS.

31.    On August 14, 2008, United States District Judge Todd J. Campbell, in the Middle District of Tennessee, authorized the continued interception of wire communications

14

occurring over **TENNESSEE'S TARGET TELEPHONE #1** (telephone number (270) 625-1208, IMSI 310410118069845, and the interception of **TENNESSEE'S TARGET TELEPHONE #2** (telephone number (931) 248-2967, IMSI 310410144895041). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bruce FERGUSON; (2) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley WALCOTT, a/k/a Joe WOLCOTT, a/k/a Joe WALCOTT, a/k/a WILDCAT; (3) Jeffery Lynn COPAS, a/k/a Jeffery Lyn COPAS, a/k/a TERMITE; (4) Jerry Hale GLASS; (5) Kevin Joe WOLCOTT; (6) Calvin Eugene DAVIS; (7) Calvin FRENCH, a/k/a Harvey FRENCH; (8) Randall B. WILLIAMS, a/k/a RANDY; (9) Jim LNU; (10) Cliff DURARD; (11) Binx LNU; (12) Tonya McKinney BREAUX; (13) Clint LNU and (14) Bobby FAIRCHILD.

32.     On August 14, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the continued interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #7** ((915) 217-8066, IMSI Number 310410162734704). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El Jefe" and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez GARCIA, a.k.a. "Guero"; (25) Max LNU; (26) Miguel

15

LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA; (44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy LNU; (53) Santos CHAVEZ, Jr., a.k.a. Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18; (56) FNU LNU-19; (57) Meño LNU; (58) Patricia MORALES, a.k.a. Patty; (59) Carlos Ramon CARRILLO, a.k.a. Carlos LNU-3; (60) FNU LNU-20; (61) Jose Angel ESPARZA, a.k.a. FNU LNU-21, "El Perro," "El Perrillo," and "El Pelon;" (62) FNU LNU-22; (63) Oscar Rene RONQUILLO-Dominguez; (64) Rosa GUEVARA. a.k.a. Rosa RONQUILLO; (65) Daniel James SHAW; (66) Benny RAMOS, a.k.a. Benito Bosque RAMOS; (67) Juan Antonio TERRAZAS; (68) Edgar MAGALLANES-Cardenas; (69) Bobby FAIRCHILD and (70) Santiago Humberto PEREZ-Piñon.

33.     On August 8, 2008, United States District Judge James H. Payne, in the Eastern District of Oklahoma, authorized the interception of wire communications occurring over **TARGET TELEPHONE #2** (telephone number (918) 696-1755, IMSI: 310410182378968 and IMEI/ESN: 355768013462026). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bobby FAIRCHILD; (2) Jose ESPARZA; (3) Alfredo GUZMAN; (4) Harvey FRENCH; (5) Rhonda VALVIDIA and (6) Kevin WOLCOTT.

34.     On July 23, 2008, United States District Judge James H. Payne, in the Eastern District of Oklahoma, authorized the interception of wire communications occurring over

16

**TARGET TELEPHONE #1** (telephone number (918) 704-5940, IMSI 310410189938550, and IMEI/ESN: 011395003051936). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bobby FAIRCHILD; (2) Jose ESPARZA.

35.     On July 15, 2008, United States District Judge Todd J. Campbell, in the Middle District of Tennessee, authorized the interception of wire communications occurring over **TENNESSEE'S TARGET TELEPHONE #1** (telephone number (270) 625-1208, IMSI 310410118069845). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Bruce FERGUSON; (2) Joseph McKinley WOLCOTT, a/k/a Joseph McKinley WALCOTT, a/k/a Joe WOLCOTT, a/k/a Joe WALCOTT, a/k/a WILDCAT; (3) Jeffery Lynn COPAS, a/k/a Jeffery Lyn COPAS, a/k/a TERMITE; (4) Jerry Hale GLASS; (5) Kevin Joe WOLCOTT and (6) Calvin Eugene DAVIS.

36.     On July 15, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the continued interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #7** ((915) 217-8066, IMSI Number 310410162734704). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El Jefe" and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos

17

LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez GARCIA, a.k.a. "Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA; (44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy LNU; (53) Santos CHAVEZ, Jr., a.k.a. Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18; (56) FNU LNU-19; (57) Meño LNU; (58) Patricia MORALES, a.k.a. Patty; (59) Carlos Ramon CARRILLO, a.k.a. Carlos LNU-3; (60) FNU LNU-20; (61) Jose Angel ESPARZA, a.k.a. FNU LNU-21, "El Perro," "El Perrillo," and "El Pelon;" (62) FNU LNU-22; (63) Oscar Rene RONQUILLO-Dominguez; (64) Rosa GUEVARA. a.k.a. Rosa RONQUILLO; (65) Daniel James SHAW; (66) Benny RAMOS, a.k.a. Benito Bosque RAMOS; (67) Juan Antonio TERRAZAS; (68) Edgar MAGALLANES-Cardenas; (69) Bobby FAIRCHILD and (70) Santiago Humberto PEREZ-Piñon.

37.     On June 17, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the original interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #7** ((915) 217-8066, IMSI Number 310410162734704). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez,

a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El Jefe" and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez GARCIA, a.k.a. "Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA; (44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy LNU; (53) Santos CHAVEZ, Jr., a.k.a. Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18; (56) FNU LNU-19; (57) Meño LNU; (58) Patricia MORALES, a.k.a. Patty; (59) Carlos Ramon CARRILLO, a.k.a. Carlos LNU-3; (60) FNU LNU-20; (61) Jose Angel ESPARZA, a.k.a. FNU LNU-21, "El Perro," "El Perrillo," and "El Pelon;" (62) FNU LNU-22; (63) Oscar Rene RONQUILLO-Dominguez; (64) Rosa GUEVARA. a.k.a. Rosa RONQUILLO; (65) Daniel James SHAW; (66) Benny RAMOS, a.k.a. Benito Bosque RAMOS; (67) Juan Antonio TERRAZAS and (68) Edgar MAGALLANES-Cardenas.

38.     On June 11, 2008, United States District Judge Lewis T. Babcock, in the District of Colorado, authorized the interception of wire communications occurring over **COLORADO'S TARGET TELEPHONE #4** (telephone number (303) 350-6195, UFMI Number 121*768*1637, and IMSI Number 316010007454991). The following individuals were

listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El Jefe," and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez GARCIA, a.k.a: "Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA; (44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy LNU; (53) Santos CHAVEZ, Jr., a.k.a. Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18; (56) FNU LNU-19 (57) Meño LNU; (58) Patricia MORALES, a.k.a. Patty; (59) Carlos Ramon CARRILLO, a.k.a. Carlos LNU-3; (60) FNU LNU-20; (61) FNU LNU-21 and (62) FNU LNU-22.

39.     On April 6, 2007, in a Federal Bureau of Investigation case, United States District Judge David Briones, of the Western District of Texas, entered an order in which he authorized the interception of wire communications occurring over a telephone. In the application Daniel

SHAW, date of birth: December 9, 1973, was listed as a TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION. An order authorizing the continued interception of wire communications was signed on May 8, 2007.

40.     On May 27, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the continued interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #4** (telephone number (303) 350-6195, UFMI Number 121*768*1637 and IMSI Number 316010103004633).   The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El Jefe" and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez GARCIA, a.k.a. "Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA; (44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy LNU; (53) Santos

21

CHAVEZ, Jr., a.k.a. Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18; (56) FNU LNU-19

(57) Meño LNU; (58) Patricia MORALES, a.k.a. Patty; (59) Carlos Ramon CARRILLO, a.k.a.

Carlos LNU-3; (60) FNU LNU-20; (61) FNU LNU-21 and (62) FNU LNU-22.

  41. On May 6, 2008, United States District Judge Kathleen Cardone, of the Western

District of Texas, authorized the continued interception of wire communications occurring over

**EL PASO'S TARGET TELEPHONE #1** (telephone number 011-52-656-282-2726, UFMI

Number 62\*229760\*9 and IMSI Number 334010010692193) and **EL PASO's TARGET**

**TELEPHONE #6** (telephone number (915) 850-2339, UFMI Number 121\*729\*5368, and IMSI

Number 316010105520756). Although activation of **EL PASO'S TARGET TELEPHONE #1**

began on May 7, 2008, at approximately 10:03 a.m., the interception of **EL PASO'S TARGET**

**TELEPHONE #1** did not begin until 12:29 p.m. on May 7, 2008. On May 7, 2008, an amended

application for authorization to continue the interception of conversations occurring over **EL**

**PASO'S TARGET TELEPHONE #1** and **EL PASO'S TARGET TELEPHONE #6** was filed

with Judge Cardone because the original paperwork filed with the court reflected that continued

interception for thirty days would commence at the termination of the current order. At the time,

a current order did not exist for **EL PASO'S TARGET TELEPHONE #1**. An amended order

was entered to reflect that continued interception would begin on May 6, 2008. The interception

of conversations occurring over **EL PASO'S TARGET TELEPHONE #1** did not begin until

after Judge Cardone entered the amended order. The following individuals were listed in the

application and amended application as TARGET INTERCEPTEES/SUBJECTS OF THE

INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard

ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel

Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-

22

Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11)

Erubiel SOLIS, a.k.a. "El Jefe," and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael

AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ; (16) Nancy LARA;

(17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a.

Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael Perez

GARCIA, a.k.a. "Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a.

"Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU

LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU

LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40)

FNU LNU-16; (41) Christopher SARINANA; (42) Herman MARRUFO; (43) Aaron ARANDA;

(44) Jose Javier ARANDA; (45) Gregg LNU; (46) Wayne LNU; (47) Hector LNU; (48) Lalo

LNU; (49) FNU LNU, a.k.a. Tocayo; (50) Christian NAVARRETE; (51) Juan LNU; (52) Chuy

LNU; (53) Santos LNU; (54) FNU LNU-17; (55) FNU LNU-18 and (56) FNU LNU-19.

     42.     On April 25, 2008, United States District Judge David Briones, of the Western

District of Texas, authorized the interception of wire communications occurring over **EL**

**PASO'S TARGET TELEPHONE #2** (telephone number (915) 727-0328, UFMI Number

128*1021280*7 and IMSI Number 316010007454991) and **EL PASO'S TARGET**

**TELEPHONE #4** (telephone number (303) 350-6195, UFMI Number 121*768*1637, and IMSI

Number 316010007454991).    The following individuals were listed in the application as

TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION:(1) Jose Luis

TERRAZAS, a.k.a. "Gordo"; (2) Jesus Rodolfo MARTINEZ, a.k.a. "Compita"; (3) Richard

ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel

Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-

Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA. a.k.a. "ULYSSES"; (11) Erubiel SOLIS, a.k.a. "El Jefe," and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ, a.k.a. "Manny"; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene SOTELO-Alvarado, a.k.a. Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael PEREZ-Garcia, a.k.a. "Guero"; (25) Max LNU; (26) Miguel LNU; (27) Eusebio MARTINEZ, a.k.a. "Chaparrito"; (28) Jesus Armando ARANDA, a.k.a. FNU LNU-3; (29) FNU LNU-4; (30) FNU LNU-5; (31) FNU LNU-6; (32) FNU LNU-7; (33) FNU LNU-8; (34) FNU LNU-10; (35) FNU LNU-11; (36) FNU LNU-12; (37) FNU LNU-13; (38) FNU LNU-14; (39) FNU LNU-15; (40) FNU LNU-16; (41) FNU LNU-17; (42) FNU LNU-18; (43) FNU LNU-19; (44) Christopher SARINANA; (45) Herman MARRUFO; (46) Aaron ARANDA; (47) Jose Javier ARANDA; (48) Greg LNU; (49) Wayne LNU; (50) Hector LNU; (51) Lalo LNU; (52) FNU LNU, a.k.a. Tocayo, and (53) Christian NAVARRETE.

43.     On April 15, 2008, U.S. District Judge David Briones, of the Western District of Texas, authorized the original interception of wire communications occurring over a telephone using (915) 727-3278, PTT number 128*969*3608, and IMSI number 316010159208403. The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: Rafael PEREZ-Garcia, Jose Luis TERRAZAS and Eusebio MARTINEZ.

44.     On April 3, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the original interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #6** ((915) 850-2339, PTT Number 121*729*5368, IMSI Number 316010105520756).   The following individuals were listed in the application as

TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: Jose Luis TERRAZAS; Jesus Rodolfo MARTINEZ; Richard ESCARCEGA; Hermelinda MILEDI; Alma Rosa GANEM, a.k.a. "Elma"; Miguel Arturo MILEDI; Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; Rogelio RODRIGUEZ-Lopez; Victor Hugo MONTALVO; Luis Alfonso AMAYA, a.k.a. "Ulysses"; Erubiel SOLIS, a.k.a. "El Jefe," and FNU LNU-1; Luis Carlos CORONEL; Michael AVILA; Jose Luis GABALDON; Manuel Enrique GONZALEZ; Nancy LARA; Beto LNU; Carlos LNU-1; Carlos LNU-2; Rene LNU; Manuel LNU; Joe LNU; Ricardo ESPINOZA; Rafael PEREZ-Garcia, a.k.a "Guero"; Max LNU; Miguel LNU; Eusebio MARTINEZ, a.k.a. "Chaparrito"; FNU LNU-3; FNU LNU-4; FNU LNU-5; FNU LNU-6; FNU LNU-7; FNU LNU-8; FNU LNU-10; FNU LNU-11; FNU LNU-12; FNU LNU-13; FNU LNU-14; FNU LNU-15 and FNU LNU-16. On April 6, 2008, the interception of conversations occurring over **EL PASO's TARGET TELEPHONE #6** commenced.

45.     On April 2, 2008, U.S. District Judge David Briones, of the Western District of Texas, authorized the original interception of wire communications occurring over a telephone using (915) 892-0868, PTT: 128*969*2700, IMSI 316010159206607, which is used by Rafael PEREZ-Garcia. In the application for the continued authorization for this telephone Rafael PEREZ-Garcia, Manuel Enrique GONZALEZ, Jose Luis TERRAZAS and Eusebio MARTINEZ were identified as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION.

46.     On March 28, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #2** (telephone number (915) 727-0328, UFMI Number 128*1021280*7 and IMSI Number 316010007454991), **EL PASO'S TARGET TELEPHONE #3** (UFMI Number   62*13*14785 and IMSI Number 334010010880350) **EL PASO'S**

25

**TARGET TELEPHONE #4** (telephone number (303) 350-6195, UFMI Number 121*768*1637, and IMSI Number 316010007454991) and **EL PASO'S TARGET TELEPHONE #5** (UFMI Number 52*302646*12, and IMSI Number 334010005003083). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: Jose Luis TERRAZAS; Jesus Rodolfo MARTINEZ; Richard ESCARCEGA; Hermelinda MILEDI; Alma Rosa GANEM, a.k.a. "Elma"; Miguel Arturo MILEDI; Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; Rogelio RODRIGUEZ-Lopez; Victor Hugo MONTALVO; Luis Alfonso AMAYA, a.k.a. "Ulysses"; Erubiel SOLIS, a.k.a. "El Jefe," and FNU LNU-1; Luis Carlos CORONEL; Michael AVILA; Jose Luis GABALDON; Manuel Enrique GONZALEZ; Nancy LARA; Beto LNU; Carlos LNU-1; Carlos LNU-2; Rene LNU; Manuel LNU; Joe LNU; Ricardo ESPINOZA; Rafael PEREZ-Garcia, a.k.a. "Guero"; Max LNU; Miguel LNU; Eusebio MARTINEZ, a.k.a. "Chaparrito"; FNU LNU-3; FNU LNU-4; FNU LNU-5; FNU LNU-6; FNU LNU-7; FNU LNU-8; FNU LNU-10; FNU LNU-11; FNU LNU-12; FNU LNU-13; FNU LNU-14; FNU LNU-15 and FNU LNU-16. On March 29, 2008, the interception of conversations occurring over **EL PASO'S TARGET TELEPHONE #2**, **EL PASO'S TARGET TELEPHONE #3, EL PASO'S TARGET TELEPHONE #4** and **EL PASO'S TARGET TELEPHONE #5** commenced. On April 16, 2008, the interception of conversations occurring over **EL PASO'S TARGET TELEPHONE #3** and **EL PASO'S TARGET TELEPHONE #5** terminated.

47.    On March 26, 2008, U.S. District Judge David Briones, of the Western District of Texas, authorized the continued interception of wire communications occurring over a telephone using PTT: 62*14*53219, which is used by Roberto GUERRERO-Valles, a.k.a. "Beto." In the

application for the continued authorization for this telephone Jose Luis TERRAZAS was identified as a TARGET INTERCEPTEE/SUBJECT OF THE INVESTIGATION.

48.     On March 5, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the continued interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #1** (number 011-52-1-656-282-2726, UFMI Number 62*229760*9, and IMSI Number 334010010692193). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) Erubiel SOLIS, a.k.a. "El Jefe", and FNU LNU-1; (12) Luis Carlos CORONEL; (13) Michael AVILA; (14) Jose Luis GABALDON; (15) Manuel Enrique GONZALEZ, a.k.a. "Manny"; (16) Nancy LARA; (17) Beto LNU; (18) Carlos LNU-1; (19) Carlos LNU-2; (20) Rene LNU; (21) Manuel LNU; (22) Joe LNU; (23) Ricardo ESPINOZA; (24) Rafael PEREZ- Garcia, a.k.a. "Guero"; (25) FNU LNU-3; (26) FNU LNU-4; (27) FNU LNU-5; (28) FNU LNU-6; (29) FNU LNU-7; (30) FNU LNU-8; (31) FNU LNU-10; (32) FNU LNU-11; (33) FNU LNU-12; (34) FNU LNU-13; (35) FNU LNU-14; (36) FNU LNU-15 and (37) FNU LNU-16.   On March 6, 2008, the interception of conversations occurring over **EL PASO'S TARGET TELEPHONE-1** continued, but was terminated on April 4, 2008.

49.     On February 4, 2008, United States District Judge David Briones, of the Western District of Texas, authorized the original interception of wire communications occurring over **EL PASO'S TARGET TELEPHONE #1** (number 011-52-1-656-282-2726, UFMI Number

27

62*229760*9, and IMSI Number 334010010692193). The following individuals were listed in the application as TARGET INTERCEPTEES/SUBJECTS OF THE INVESTIGATION: (1) Jose Luis TERRAZAS; (2) Jesus Rodolfo MARTINEZ; (3) Richard ESCARCEGA; (4) Hermelinda MILEDI; (5) Alma Rosa GANEM, a.k.a. "Elma"; (6) Miguel Arturo MILEDI; (7) Antonio RODRIGUEZ-Lopez, a.k.a. "Tony"; (8) Rogelio RODRIGUEZ-Lopez; (9) Victor Hugo MONTALVO; (10) Luis Alfonso AMAYA, a.k.a. "Ulysses"; (11) FNU LNU-1, a.k.a. "El Jefe"; (12) Luis Carlos CORONEL; (13) Michael AVILA and (14) Jose Luis GABALDON.   On February 5, 2008, the interception of conversations occurring over **EL PASO'S TARGET TELEPHONE #1** commenced.

50.     On February 26, 2008, U.S. District Judge David Briones, of the Western District of Texas authorized the original interception of wire communications occurring over a telephone using PTT: 62*14*26012, which is used by Roberto GUERRERO-Valles, a.k.a. "Beto". Jose Luis TERRAZAS was listed as a TARGET INTERCEPTEE/SUBJECT OF THE INVESTIGATION.

## **BACKGROUND OF THE INVESTIGATION**

51.     On June 20, 2008, Agents with the Drug Enforcement Administration (DEA) Tulsa Resident Office initiated an investigation on the Bobby FAIRCHILD (FAIRCHILD) drug trafficking organization (DTO).   Agents determined that FAIRCHILD has been documented in numerous state and local law enforcement agency reports of investigation (ROI) and has been known as a large scale distributor of methamphetamine for over five (5) years.  FAIRCHILD is believed to have connections to higher ranking criminal associates located on the southwest border of the United States and other associates in Mexico.

28

52.     FAIRCHILD has been identified as a source of supply (SOS) of large amounts of methamphetamine and marijuana for a number of locations throughout eastern Oklahoma and possibly throughout the entire state of Oklahoma.   Additionally, agents from the Tulsa Resident Office have received information relating to the illegal drug trafficking activities of FAIRCHILD through witnesses, law enforcement reports of investigation and through numerous conversations with state and local law enforcement agents/officers.

53.     Members of the DEA Tulsa Resident Office have determined that FAIRCHILD resides in the town of Oktaha, Muskogee County, Oklahoma, and controls and coordinates his illegal enterprise from that area.  FAIRCHILD has been identified as a distributor/transporter and organization leader of his drug trafficking organization based in Oklahoma.  FAIRCHILD has subsequently been identified as the cell head of the drug trafficking organization based in Oklahoma.

54.     Statements, reports of investigation and information gathered by members of the DEA Tulsa Resident Office and other law enforcement agencies show that beginning in approximately 2003 through the present time, FAIRCHILD has been and is currently responsible for coordinating and/or transporting large shipments of methamphetamine from areas in Mexico, along the southwestern border, to locations in Oklahoma and other locations throughout the United States yet to be identified.

55.     Intelligence and investigative information indicates FAIRCHILD is responsible for concealing shipments of drugs and/or drug proceeds in various conveyances, which he then coordinates and/or transports to a number of locations in Oklahoma and possibly to other locations in the United States. Based on conversations with agents of the Oklahoma Bureau of Narcotics and Dangerous Drugs (OBNDD), FAIRCHILD is, according to their information and

29

investigation, one of, if not the largest methamphetamine dealer in the state of Oklahoma.

56.     During the course of the investigation, the DEA Tulsa Resident Office has worked in conjunction with the DEA London, Kentucky Resident Office.  During the ongoing Title-III investigation conducted by the DEA Tulsa Resident Office, conversations between Bobby FAIRCHILD on **TARGET TELEPHONE #5,** and **KENTUCKY'S TARGET TELEPHONE #2**.  Based on the information provided by the London, Kentucky Resident Office, **KENTUCKY'S TARGET TELEPHONE #2** is utilized by Jeremy STEWART. Members of the DEA London, Kentucky, office relayed intercepted telephone conversations between **KENTUCKY'S TARGET TELEPHONE #2** (STEWART) and **TARGET TELEPHONE #5** planning and coordinating a future shipment of drugs from FAIRCHILD and Jeremy STEWART.

57.     Agents in London, Kentucky, explained Jeremy STEWART is the target of their large scale Title III investigation.  The agents further explained STEWART has been identified through their investigation, witnesses and through debriefings of confidential sources as a high ranking member of a large scale drug trafficking organization.

58.     Based on the afore-mentioned information and in conjunction with past information and intelligence, members of the DEA Tulsa Resident Office initiated an investigation regarding the illegal international drug trafficking activities of FAIRCHILD.  This investigation will be conducted by the members of the DEA Tulsa Resident Office; DEA El Paso Field Division; DEA Nashville, Tennessee; DEA London, Kentucky; Oklahoma Bureau of Narcotics and Dangerous Drugs (OBNDD); the Internal Revenue Service (IRS); the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); the Federal Bureau of Investigation (FBI) and the United States Attorney's Office (USAO) for the Eastern District of Oklahoma (EDOK).

## BACKGROUND AND PROBABLE CAUSE TO INTERCEPT

## FAIRCHILD'S TELEPHONE

59.     Pursuant to the interceptions, agents identified the following telephones being utilized by FAIRCHILD to further his drug trafficking activities: (918) 704-5940 **(TARGET TELEPHONE #1),** (918) 696-1755 **(TARGET TELEPHONE #2),** (918) 457-8368 **(TARGET TELEPHONE #3)** and (918) 629-3876 **(TARGET TELEPHONE #4).**

60.     On July 24, 2008, a court ordered interception began on telephone number (918) 704-5940, belonging to or utilized by FAIRCHILD, hereafter referred to at **TARGET TELEPHONE #1**.  On August 12, 2008, a court ordered interception began on telephone number (918) 696-1755, belonging to or utilized by FAIRCHILD, hereafter referred to at **TARGET TELEPHONE #2**.  On September 5, 2008, and again on October 10, 2008, a court order was signed authorizing the continued interception of the conversations on **TARGET TELEPHONE #2**.  On September 5, 2008, a court ordered interception began on telephone number (918) 457-8368, belonging to or utilized by FAIRCHILD, hereafter referred to at **TARGET TELEPHONE #3**.  On October 3, 2008, a court order was signed authorizing the continued interception of conversations on **TARGET TELEPHONE #3**.  On November 3, 2008, a court ordered interception began on telephone number (918) 629-3876, belonging to or utilized by FAIRCHILD, hereafter referred to at **TARGET TELEPHONE #4**.  On October 28, 2008, a court order was signed authorizing the interception of communications occurring over telephone number (606) 213-1598, hereafter referred to as **KENTUCKY'S TARGET TELEPHONE #1,** and telephone number (606) 634-9921, hereafter referred to as **KENTUCKY'S TARGET TELEPHONE #2**

31

61.     The above-mentioned intercepted **TARGET TELEPHONES** utilized by FAIRCHILD have assisted in providing Agents with Bobby FAIRCHILD's day-to-day drug activities but, at this point, has not produced evidence indicative of the full scope of the **TARGET INTERCEPTEES**' illegal activities or the identity of all co-conspirators. Below are some summaries from calls intercepted pursuant to the above-listed Court Orders. Unless otherwise noted, the information provided is based on summaries of the telephone calls.

### TARGET TELEPHONE #5

### (270) 994-3072

62.     On November 7, 2008, FAIRCHILD utilized **TARGET TELEPHONE #5** to contact Jeremy STEWART on **KENTUCKY'S TARGET TELEPHONE #2**. During the conversation, STEWART stated "It's a good thing that we didn't uh, load those stags up or I'da lost em." STEWART informed FAIRCHILD that he (STEWART) was pulled over near Little Rock, Arkansas. STEWART also stated he was followed from Oklahoma by Law Enforcement in a black Dodge Charger. STEWART further explained how the police looked everywhere in the car for drugs. STEWART stated "man I'm glad I went with my gut feeling." FAIRCHILD asked STEWART, "Did they go through all your phones and everything?" STEWART further stated the officer said "they was some green legged stags in that car." FAIRCHILD asked STEWART if the black Charger followed Stewart from Muskogee, FAIRCHILD'S residence. STEWART replied, "I believe picked him up out there around Muskogee or somewhere." FAIRCHILD stated "You in that car now?" STEWART replied, "No huh uh. Hell no I won't, I won't talk in that mother fucker...Hell no. I'll never talk in that fucking thing again." FAIRCHILD stated, "Yeah, you just need to go get you one of them RFD detectors (Radio

32

Frequency Detector)...And put in." STEWART stated, "Yeah...It picks up phones or people that's got wires or anything."

63.    Based on the previous conversation, it is believed that FAIRCHILD and STEWART were discussing the transportation of marijuana. On the same date and the evening prior, Agents established surveillance on FAIRCHILD and STEWART. Agents observed FAIRCHILD and STEWART meet at a barn located on the back of FAIRCHILD'S property. During the conversation Stewart stated "It's a good thing that we didn't uh, load those stags up or I'da lost em." Based on previous conversation between FAIRCHILD and other co-conspirators, it is know that the word "Stag" is a code work for illegal drugs. Further, it is believed that STEWART was making reference to having the drugs seized by Law Enforcement when STEWART mentioned, "Ida lost em." STEWART also stated, "man I'm glad I went with my gut feeling." This statement is indicative that STEWART did not feel safe about transporting illegal drug on this occasion, therefore FAIRCHILD and STEWART did not load the car with the illegal drugs. FAIRCHILD was also concerned when he asked, "Did they go through all your phones and everything?" Based on the ongoing investigation, it is known that FAIRCHILD disposes of phones on a regular basis in attempt to thwart the efforts of Law Enforcement; therefore, FAIRCHILD was inquiring from STEWART to see if the telephones had been compromised. During the conversation, FAIRCHILD also stated, "You in that car now?" STEWART replied, "No huh uh. Hell no I won't, I won't talk in that mother fucker...Hell no. I'll never talk in that fucking thing again." FAIRCHILD then stated, "Yeah, you just need to go get you one of them RFD detectors (Radio Frequency Detector)...And put in." Based on that statement, it is believed that FAIRCHILD is instructing STEWART to use a Radio Frequency

Detector to check for recording devices within the vehicle. It is also apparent that FAIRCHILD and STEWART are aware of Law Enforcement's capabilities to record conversations.

64.     On November 8, 2008, FAIRCHILD utilized **TARGET TELEPHONE #5** to contact STEWART on **KENTUCKY'S TARGET TELEPHONE #2**. During the conversation, FAIRCHILD informed STEWART that the previous conversation was cut off because FAIRCHILD'S cell phone ran out of minutes so FAIRCHILD had to call back from a pay phone. In reference to the above-listed traffic stop, FAIRCHILD stated, "I just think they were looking for large volumes ... I don't think they was looking for personal use." STEWART also stated, "I don't mention your name to no, no person; you know. But I'll watch out for you I promise you that." During the conversation, FAIRCHILD stated, "Anything that goes on it'll have to come straight out there. I'm not bringing nothing where I'm at ... If I have to bring where I'm at, I'm just not gonna work ... It puts me and my family in too much jeopardy and it puts me in too much of a financial jeopardy ... Getting it from point A to point B or get it from point B to point C is just too dangerous. I can't afford it."

65.     Based on the previous conversation, it is indicative that FAIRCHILD informed STEWART that the police were looking for large volumes of illegal drugs instead of personal use quantities of illegal drugs. Furthermore, when FAIRCHILD stated, "Anything that goes on it'll have to come straight out there," FAIRCHILD was indicating the illegal drugs will need to go straight from the source of supply in the Southwestern United States directly to Kentucky.

66.     On November 10, 2008, FAIRCHILD utilized **TARGET TELEPHONE #5** to contact STEWART on **KENTUCKY'S TARGET TELEPHONE #2**. During the conversation, STEWART asked FAIRCHILD, "You talked to any of them boys yet?" FAIRCHILD stated, "they've, they're trying to get ahold of me, but I'm afraid they're gonna want to bring those stags

34

here and I'm just, fuck it, I ain't doing it...If they want to let you go down there and get um or if they want to be responsible for you coming here and getting um, that's alright, but I'm not gonna be responsible for um from here to there...And I really don't even want to be responsible for um being here!" STEWART then stated, "Yeah, I would let somebody go all the way there and try it with a small one first...and see how it worked, but I'd want them to be responsible you know." FAIRCHILD stated, "The only thing that you would have be responsible for is verifying that something actually happened to um...You know, providing, providing the paper, providing the paperwork."

67.     Based on the previous conversation, it is believed that FAIRCHILD and STEWART are discussing the transportation of illegal drugs.  The conversation also indicated that neither FAIRCHILD nor STEWART were willing to be financially responsible for the illegal drugs until they arrived at their final destination.     When FAIRCHILD mentioned "paperwork," it is believed that FAIRCHILD was referring to money.

68.     On November 11, 2008, STEWART utilized **KENTUCKY'S TARGET TELEPHONE #2** to contact FAIRCHILD on **TARGET TELEPHONE #5**.  During the conversation, STEWART told FAIRCHILD, "Tell um I got uh, a boy there, he'll uh, if they want to work it out."  STEWART also asked FAIRCHILD, "what would be the minimal amount of stags would you pick up."  FAIRCHILD replied, "No less than 200."  STEWART then stated "Okay, but a man don't want to go over 3 does he? First trip? Just to see how things go?"

69.     Based on the previous conversation, it is believed that STEWART was trying to make arrangement for a driver to pick up approximately 200 pounds of marijuana.  Based on previously intercepted conversation, it is known that the word "stags" refers to illegal drugs.

70.     On December 1, 2008, Bobby FAIRCHILD utilized **TARGET TELEPHONE #5** to contact Jeremy STEWART on **KENTUCKY'S TARGET TELEPHONE #1**. During the conversation, STEWART advised FAIRCHILD of a court date on January 21st. STEWART stated, "I would like to get some of that back or all of it back really." FAIRCHILD said, "they ain't got no case to keep it." STEWART said, "I don't think so either...They hope someone will just sign off on it and be done with it." STEWART also stated, "I'd like to make them look bad one time." FAIRCHILD then stated, "I don't care about making them look bad, I just want some of that damn money back...If we can get that money back and get something rolling on the other side." STEWART said, "Act like there will be quite a few of those stags when we get things going?" FAIRCHILD replied, "There's a bunch of them over there I know that...there's got to be a bunch of them over there because they damn sure ain't over here." FAIRCHILD said, "the ones that do come through they are higher than hell on ...ain't nobody wholesaling shit." STEWART said, "even those kelsos they got out here ain't worth a shit...I don't know if they've been tinkering with them or what." FAIRCHILD replied, "I bet there selling them anyway." STEWART answered, "Yes." FAIRCHILD stated, "I ain't very good at gouging people. I just ain't that good at that shit. I know that's where the money's at." STEWART replied, "I think at the end of the day you make more money moving it." FAIRCHILD stated, "times like this you can make more money gouging them...when everything's plentiful you can't." STEWART then talked about a man in Georgia who was getting "kelsos" for "22 dollars." STEWART said, "they was 18 or 19 and just kept moving right on up." FAIRCHILD said, "I can't even get them to talk to me for less than 30...and I can't get them to do nothing at 30." FAIRCHILD said, "the big deal is everything is so short that whatever they get they can just sell it right over there and not take the chance moving it any where and I ain't doing that." FAIRCHILD further stated, "I

had stags the other day but they wanted me to come to Gainesville and pay for them and then they'd put them up there for you. I told them I'm out on that deal….I can't afford it." FAIRCHILD said, "there is probably a one in ten chance you'll loose them…nine out of ten shot you'll make it with them but if I lose them I'm fucked."

71.     Based on the previous conversation, it is believed that FAIRCHILD and STEWART were initially talking about the court date concerning the recent seizure of approximately $283,000.00. It is believed that FAIRCHILD and STEWART are trying to get that money back so they can purchase more drugs. FAIRCHILD and STEWART also discuss how the price for drugs has gone up and how difficult is now to have drugs transported because of the fear of seizure.

### TELEPHONE TOLL ANALYSIS

### TARGET TELEPHONE #5

### (270) 994-3072

72.     The use of telephone toll records and pen register data to record numbers dialed or pulsed over various telephones show specific telephone numbers have been called. Such information does not indicate the manner or delivery of a drug shipment or the methods the organization uses to import and distribute the drugs. This type of information does not specify the identity, participation and role of the person(s) initiating or receiving the telephone calls, or the importation and distribution network of which the **TARGET INTERCEPTEES**, and others as yet unknown, are a part of. At best, this information provides evidence of contact between telephone numbers subscribed to certain people. Subscriber information records subpoenaed by law enforcement only provide the name of the person(s) to whom the telephone number(s) is/are assigned and does not provide accurate data about who actually speaks on the telephone. This

37

information is not adequate, because it is the content of the calls, not the fact that they are being made, that will reveal the totality and complexity of the conspiracy.

73.     On November 17, 2008, United States Magistrate Judge Steven P. Shreder, Eastern District of Oklahoma, signed a Pen Register Order, Under Seal, authorizing the capturing of telephone numbers placing calls to/from **TARGET TELEPHONE #5** (270) 994-3072, in addition to any other dialed digits. A Pen Register for this telephone number was installed on November 21, 2008.

74.     I have conducted an analysis of pen register, trap and trace and toll information for **TARGET TELEPHONE #5**. Based upon my review of the calls made to and from this telephone facility, I believe that **TARGET TELEPHONE #5** is being used to contact conspirators (on telephones not subject to court-authorized interception) in furtherance of the criminal activity specified above. A synopsis of the pen register, trap/trace and tolls data which substantiates my belief regarding the use of **TARGET TELEPHONE #5** follows.

75.     As a result of toll records from November 1, 2008 and the Pen Register from November 21, 2008, through November 30, 2008 for the **TARGET TELEPHONE #5** (270) 994-3072 revealed two hundred fifty-two (252) total telephone calls to/from different numbers.

76.     **TARGET TELEPHONE #5** placed/received thirty-four (34) calls to/from (606) 213-9269 between November 2, 2008, and November 30, 2008. Telephone number (606) 213-9269 has been identified as being the telephone number utilized by Jeremy STEWART. STEWART is currently a target of a Kentucky Title III investigation. During this investigation, recorded conversations were captured between Bobby FAIRCHILD and STEWART indicating his involvement with the drug trafficking organization.

77.    **TARGET TELEPHONE #5** placed/received one (1) call to/from (918) 458-7759 on November 4, 2008. Telephone number (918) 458-7759 has been identified as being the telephone number subscribed to Richard Burris, RR 4, Box 1632, Checotah, Oklahoma. A records check indicated that Richard Burris was also known as (a/k/a) James Gilbert. The records check further indicated that Richard Burris, a/k/a James Gilbert, was arrested in November 1998 for trafficking marijuana. DEA records and investigations indicate that in November 2004, Richard Burris, a/k/a James Gilbert, was also involved in the clandestine manufacturing and distribution of methamphetamine in Adair County, Oklahoma. During this investigation, recorded conversations were captured between Bobby FAIRCHILD and Burris indicating his involvement with the drug trafficking organization.

78.    **TARGET TELEPHONE #5** placed/received two (2) calls to/from (817) 733-7015 between November 5, 2008, and November 25, 2008. DEA indices indicate that this telephone is subscribed to Alfredo Guzman in Ft. Worth, Texas. During this ongoing investigation, recorded conversations were captured between Bobby FAIRCHILD and Guzman, (817) 733-7015, discussing the transportation and distribution of illegal drugs.

79.    **TARGET TELEPHONE #5** placed/received two (2) calls to/from (918) 440-4345 on November 3, 2008. DEA indices indicate that this telephone is subscribed to Jimmy Smith, 31012 North 3956 Road, Ochelata, Oklahoma. During this ongoing investigation, recorded conversations were captured between Bobby FAIRCHILD and Smith, (918) 440-4345, discussing the transportation of U.S. Currency. Furthermore, on August 15, 2008, approximately $283,210.00 was seized from Smith as a result of this investigation.

80.    Based on my training and experience, narcotics traffickers often carry multiple cellular telephones. Each of these cellular telephones is assigned a different telephone number.

39

Each cellular telephone is utilized by the narcotics trafficker to make contact with specific members of the drug trafficking organization when needed. This method of communication is commonly used by narcotics traffickers for the purpose of concealing their identity to law enforcement if one or more of the members of the drug trafficking organization were arrested. Based on the pen register activity of **TARGET TELEPHONE #5,** including the number of calls made by **TARGET TELEPHONE #5** to various cellular telephones along with the volume of calls made to specific telephones, affiant believes that **TARGET TELEPHONE #5** is specially being utilized by Bobby FAIRCHILD for the purpose of narcotics trafficking negotiations.

## NEED FOR INTERCEPTION

81.    Normal investigative procedures have been tried and failed or appear unlikely to succeed if tried, or are too dangerous to employ. These investigative procedures are detailed below. Traditional methods of investigation will not be sufficient to accomplish the full goals of this investigation, which include discovering:

a.    The manner and means of the commission of the offenses;

b.    The nature, extent and methods of operation of the drug trafficking business of the **TARGET INTERCEPTEES** and others yet unknown;

c.    The identities and roles of accomplices, aiders, abettors, co-conspirators and participants in their illegal activities;

d.    The distribution and transfer of the contraband money involved in criminal activities;

e.    The existence and location of records;

f.    The location and source of resources used to finance illegal activities;

g.    The locations and items used in furtherance of those activities;

h.    The location of facilities used to store narcotics in preparation of their further distribution;

40

i.     The location and disposition of the proceeds of the **TARGET INTERCEPTEES**' illegal activities; and

j.     The physical location of the **TARGET INTERCEPTEES**, co-conspirators and associates.

## PHYSICAL SURVEILLANCE

82.    Physical surveillance has been regularly utilized by investigating agents in this case, and has proven useful in gathering some information as to areas frequented by Bobby FAIRCHILD. Physical surveillance, however, unaccompanied by electronic surveillance, is of limited value. For example, physical surveillance has not and will not enable agents to gather evidence of the whole scope of Bobby FAIRCHILD's criminal activity under investigation, and has not, and most likely will not establish conclusively the identities of various co-conspirators, including the identity of all the individuals supplying Bobby FAIRCHILD with narcotics or the identity of those to whom Bobby FAIRCHILD is selling the narcotics.

83.    Furthermore, the ultimate destination of the drug and currency shipments coordinated by Bobby FAIRCHILD is unknown; therefore, there has been no opportunity to perform physical surveillance on these locations. In addition, the location of Bobby FAIRCHILD's residence and property does not allow for effective surveillance. Bobby FAIRCHILD's property is located in rural Muskogee County, Oklahoma. The appearance of strange vehicles would arouse suspicion. In addition, the layout of the outbuildings would prevent observation of the residence from the roadway. Accordingly, the prospects for fruitful physical surveillance at this time are extremely limited. In addition, based on my experience and training, drug traffickers are extremely surveillance conscious. If the intensity of existing surveillance were to be increased, and if the subjects of this investigation became alerted to the existence of such surveillance, the result might be the temporary cessation of their illegal

41

activities or a change in their instrumentalities or methods at a critical point in the investigation. Moreover, physical surveillance will not assist law enforcement in identifying **TARGET INTERCEPTEES** or narcotics-related locations in other states. Physical surveillance, unaccompanied by electronic surveillance, is also unlikely to identify additional conspirators and their respective roles, the methods by which the narcotics are imported into and distributed in the United States, or to accomplish all of the other goals of this investigation. For the foregoing reasons, I do not believe that physical surveillance alone will be sufficient to accomplish the goals of the investigation.

### STATIONARY SURVEILLANCE

84. Stationary surveillance, in the form of a police camera or closed circuit television, will not be sufficient to accomplish the goals of the investigation. Stationary surveillance, even when it can be utilized effectively, is unlikely to establish the nature and scope of Bobby FAIRCHILD's drug activities or the roles and identities of co-conspirators. Stationary surveillance, unaccompanied by the requested wire interception, would be insufficient to conclusively establish the identity of individuals at the identified residences who are involved in narcotics trafficking. Individuals who assist Bobby FAIRCHILD with the shipment, delivery and sale of narcotics would also be very difficult to identify.

85. The use of pole cameras for remote surveillance would not be possible and if attempted could compromise the investigation. The only location which has been identified is the residence of Bobby FAIRCHILD. As previously described, the location of this residence makes it such that the installation of a pole camera would not yield an appreciable amount of intelligence. In addition, the equipment and activity associated with the installation would be readily noticed and highly suspicious. Experience has shown that pole cameras, which must be

placed on a utility pole with an integral power source, are placed too far away to accurately record the license plates of vehicles. Distance also prevents accurate recognition of the faces of people entering and leaving Bobby FAIRCHILD's residence. Another obstacle to stationary surveillance devices is that at night, even when augmented by artificial lights such as street lamps, the effectiveness of stationary surveillance is dramatically reduced.

86.     Even if agents were successful in installing a pole camera at Bobby FAIRCHILD's residence, the information provided by this stationary surveillance device is limited. It would be unlikely that vehicles would load or unload drugs in view of the camera. Agents believe that if this type of activity would occur it would more than likely occur in one of the buildings located on the ranch. In addition, the use of pole cameras would not reveal the location of pickup and delivery points in other states, nor would it identify the other individuals involved in the organization.

### TELEPHONE TOLL RECORDS, PEN REGISTER, AND TRAP AND TRACE INFORMATION

87.     Telephone toll, pen register, traps and trace information and data are of limited use in a traditional wire intercept investigation. The use of telephone toll records, and pen registers and trap and trace data has uncovered significant activity on **TARGET TELEPHONE #5** and the other being used by organization members and associates. However, due to the fact that members of the organization can disguise, change or conceal the actual users of the telephones, subscriber information obtained from toll records and pen register and trap and trace data is not very helpful or insightful. Subscriber information records only reveal the name of the person to whom the telephone number is assigned and not the actual or ultimate user. Pen register and trap and trace data and telephone toll records only allow the review of telephone

43

numbers called and the duration of an unknown conversation. Additionally, a Mexican cell phone's pen register, trap and trace, and toll data can only be captured when that telephone is utilized within the U.S. Further, DEA cannot obtain subscriber information, pen register, trap and trace, and toll records for Mexican phones. The accumulation of numerical statistics only indicates the known fact that the criminal subjects are regularly conversing and communicating with other individuals. These records cannot provide the identities of the people actually making or receiving the telephone calls, their degree of criminal involvement, or any details concerning the matters discussed. The information alone is inadequate, in that it is the content of the calls, not the fact that they are being made, that will reveal the extent of the criminal activity and the conspiracy.

88.    While DEA knows that the **TARGET INTERCEPTEES** are communicating with each other and others unknown, information derived from this data does not advise DEA who the **TARGET INTERCEPTEES** are talking to, the nature of the conversations, the manner in which they are committing the crime, the identities of the coconspirators or the location of the **TARGET INTERCEPTEES**.

## GLOBAL POSITIONING SYSTEM (GPS)

89.    Since the **TARGET TELEPHONE** is a United States cell phone, DEA agents would be able to obtain a court warrant to authorize the activation and/or monitoring of the Global Positioning System (GPS) function of the **TARGET TELEPHONE** to determine and to track the movement and location of the **TARGET TELEPHONE**. However, the Los Angeles Field Division HIDTA Group 47 advised DEA agents that pursuant to a California State court authorized wire interception, they were pinging their target telephone in an attempt to locate their subject and make a large currency seizure. What the agents did not know and what was later

44

confirmed by Sprint/Nextel Representatives after the fact, based on their CS' information, is that every time the agents pinged the Target Telephone, a notice was going into the GPS function of his cellular telephone and confirming that law enforcement elements were pinging his telephone which was depicted with all zeros on the telephone screen. This information further corroborated why the Target had numerous cell phones and discontinued his use on a frequent basis. This is a function built into the cell phones by the individual manufacturer. Thus, obtaining a court warrant to authorize the activation and/or monitoring of the Global Positioning System (GPS) function of the **TARGET TELEPHONE** may compromise the integrity of this investigation.

## USE OF SEARCH WARRANTS

90.    At this stage of the investigation, without additional information from electronic surveillance and other sources, the execution of search warrants in this matter could not be reasonably expected to produce incriminating evidence indicative of the full scope of the **TARGET INTERCEPTEES**' activities or the identity of all co-conspirators. Also search warrants would not be appropriate at this stage of the investigation, as the locations where the **TARGET INTERCEPTEES** receive, hide, and distribute their drugs have not been identified. It is my opinion that without electronic surveillance of the **TARGET INTERCEPTEES**, law enforcement will not be able to fully identify all of the stash locations used by Bobby FAIRCHILD or his co-conspirators on which to execute search warrants.

91.    Furthermore, it is unlikely that all or even many of the co-conspirators would be present during the execution of any search warrants at the various locations, which may become the subject of search warrants in the future. Those not present during the execution of the search warrants would likely be alerted to the existence of this investigation, allowing them to further insulate themselves from successful detection. Furthermore, I know that following seizures and

other enforcement activity, it is common practice for trafficking groups to flee to Mexico for months at a time, apparently returning only after assuring themselves that law enforcement is no longer interested in their activities.

## USE OF UNDERCOVER AGENT(S)

92.     The use of undercover (UC) government agents to infiltrate the **TARGET INTERCEPTEES'** organization does not appear likely to succeed in producing evidence that will achieve all of the goals of the investigation.  At this juncture in the investigation, Affiant believes it would be of little value to introduce an under cover agent into the DTO.  Essentially, under these circumstances in this investigation, there is not a role which an undercover agent could assume to further the investigation.

93.     I have learned through agents with the Oklahoma Bureau of Narcotics (OBN) concerning the use of undercover agents (UC) into the Bobby FAIRCHILD Drug Trafficking Organization (DTO).  During the course of the OBN investigation into Bobby FAIRCHILD's DTO, beginning in or around 2002, UC agents were utilized to make a purchase from members of the DTO.  The use of undercover agents was successful to a limited degree with lower level members of the DTO.  Further attempts to utilize UC agents for the purpose of purchasing and identifying higher ranking organization members failed.

94.     The use of undercover agents is an important part of an investigation of narcotics law violations.  However, unless an undercover agent is taken into the confidence of significant narcotics violators, he/she is unlikely to learn the full scope of the violators' illegal activities.  In addition, it is not in the interest of narcotics violators to reveal to others, including other narcotics traffickers, the way he/she conducts his/her narcotics trafficking activities, since other traffickers may seek to interfere with those activities.

46

## CONFIDENTIAL SOURCE/SOURCE OF INFORMATION

95.     Since the beginning of the Oklahoma Bureau of Narcotics (OBN) investigation, attempts have been made to identify confidential informants capable of infiltrating, providing testimony and fully neutralizing the illegal activities of the **TARGET INTERCEPTEES** and other co-conspirators not yet identified. To date, the government has been unsuccessful in locating such a confidential informant. Although the OBN has identified and utilized a Source of Information (SOI) who was successful in the introduction of an agent to a lower ranking member of the drug trafficking organization. The SOI is currently not in a position to infiltrate the current Interceptees.

## USE OF GRAND JURY SUBPOENAS

96.     Based on my training and experience, I believe that serving grand jury subpoenas on persons and their associates believed to be involved in this conspiracy would not be successful in achieving the stated goals of this investigation. If Bobby FAIRCHILD, his co-conspirators, or other participants were to be called to testify before a grand jury, they would most likely be uncooperative and invoke their Fifth Amendment privilege not to testify.

97.     The issuance of grand jury subpoenas likely would not lead to the discovery of critical information and undoubtedly would alert the **TARGET INTERCEPTEES** to this investigation. Witnesses who could provide additional relevant evidence to a grand jury have not been identified or would themselves be participants trafficking drugs. Such individuals would face prosecution themselves; it is unlikely therefore that any of them would testify voluntarily. Nor would it be desirable at this time to seek immunity for such individuals and to compel their testimony. Immunizing them could thwart the public policy that they be held

47

accountable for their crimes. Moreover, it is likely that such subjects would prefer to be held in contempt rather that testify.

98.     The issuance of grand jury subpoenas to other individuals likely would not lead to the discovery of critical information and undoubtedly would alert the **TARGET INTERCEPTEES** to the pendency of an investigation. Moreover, not all of the **TARGET INTERCEPTEES** have been identified or located, and, in absence of further evidence identifying co-conspirators and their respective involvement in drug trafficking, it is difficult to determine whom to subpoena to the Grand Jury. Finally, some of the **TARGET INTERCEPTEES** may travel or live outside the United States, beyond the Grand Jury's subpoena power.

## INTERVIEWS OF TARGET INTERCEPTEE

99.     Based upon my training and experience, I believe interviews of Bobby FAIRCHILD, or his other known and unknown associates, would produce negligible results and also compromise the investigation. Foremost, the majority of the **TARGET INTERCEPTEES** have not yet been identified or located. I also believe that any responses to interviews would contain a significant number of untruths, diverting the investigation with false leads that would frustrate the purposes of this investigation. Additionally, questioning any of the co-conspirators would alert the other co-conspirators, and cause a change in their methods of operation before all of the co-conspirators are identified, thereby compromising the investigation and resulting in the possible destruction or concealment of documents and other evidence, and the possibility of harm to cooperating sources whose identities may become known or whose existence may otherwise be compromised. Finally, for the same reasons set forth above in connection with use of Grand Jury subpoenas, the use of interviews will not accomplish the stated goals of this

investigation, and would prematurely alert Bobby FAIRCHILD and co-conspirators of this investigation.

## FINANCIAL INVESTIGATION

100.    Although this investigation has lead Agents to believe that money laundering has been committed, is being committed and/or will be committed, Agents have not obtained any financial records, but are beginning to identify assets. DEA Tulsa is waiting to seize U.S. currency and/or illegal drugs before moving forward with an aggressive financial investigation.

## OTHER COURT AUTHORIZED WIRE INTERCEPTIONS

101.    If the Court were to authorize the interception of conversations occurring over **TARGET TELEPHONE #5**, I believe that these interceptions would confirm that Bobby FAIRCHILD distributes large quantities of narcotics throughout the United States and would provide information on who are Bobby FAIRCHILD's co-conspirators. Further, the intercepted conversations of Bobby FAIRCHILD will possibly provide Agents with Bobby FAIRCHILD's day-to-day drug activities and will fully disclose the conversations between Bobby FAIRCHILD and other interceptees. I believe that conducting a court authorized wire interception of conversations occurring over **TARGET TELEPHONE #5**, which is utilized by Bobby FAIRCHILD, will also assist Agents to identify possible stash houses in the Muskogee, Oklahoma, area. The prior intercepts authorized by the Court on July 23, 2008, (**TARGET TELEPHONE #1**); August 8, 2008 (**TARGET TELEPHONE #2**) with extensions authorized on September 5, 2008, and October 10, 2008; and September 5, 2008 (**TARGET TELEPHONE #3**), with an extension granted on October 3, 2008; and November 3, 2008 (**TARGET TELEPHONE #4**), have produced valuable information regarding the criminal conduct of the **TARGET VIOLATORS**, but have failed thus far to reveal the identity of all of the conspirators,

49

their methods of operation, and the full scope of the criminal activity.  The objectives of the investigation have not been met, and further interception is necessary to fulfill those objectives.

### TRASH SEARCHES

102.   No trash searches at this stage of this investigation have been conducted.  The reason for this is that no locations have been credibly established as stash houses that would likely yield any controlled substances, or potentially useful evidence.  Therefore, no intelligence can be gathered utilizing this investigative technique.  The **TARGET INTERCEPTEES'** heightened awareness of law enforcement surveillance will likely cause them to become even more cautious in their illegal activities.  In addition, the use of trash searches to gain intelligence is not possible at Bobby FAIRCHILD's residence.  As previously described, it is located off of the main road in a rural area.  There is no central location for the accumulation of trash by area residents.  Therefore, the risk of being detected and compromised during a trash search far outweighs the amount of intelligence to be gained from an effort.  I believe that only a court authorized wire interception conducted on **TARGET TELEPHONE #5** will be able to provide real time information that will allow this investigation to attain the investigative goals set forth herein.

### ARRESTS

103.   Attempting to arrest the **TARGET INTERCEPTEES** at this point would mean that several of the objectives of this investigation would be unfulfilled.  Most of the **TARGET VIOLATORS** have yet to be identified.  If the DEA tried to make any arrests, unidentified co-conspirators would almost certainly cease their illegal activities or change the locations, instrumentalities and methods used to conduct their illegal activities, thereby frustrating the investigation.

104.    As discussed above, the purpose of this investigation is to identify, locate and arrest the persons responsible for the importation and distribution of the above-described shipments of Methamphetamine.   As indicated above, and as discussed below, several investigative techniques have been tried, or reasonably appear likely to fail if tried, or are likely to be too dangerous to employ to achieve these objectives

105.    For the above listed reasons, I believe that alternative investigative techniques would fail to accomplish the objectives of the investigation.

## MINIMIZATION

106.    All monitoring of wire communications over the **TARGET TELEPHONES** will be minimized in accordance with Chapter 119 of Title 18, United States Code.

107.    The investigative or law enforcement officers of the United States and translators, if necessary, who are to carry out the requested interception of wire communications, will be instructed concerning the steps they should take to avoid infringing upon any attorney-client privilege or other recognized privileges.  In addition, all communications intercepted will be conducted in such a way as to minimize the interception of communications not otherwise criminal in nature or subject to interception under Chapter 119, Title 18, United States Code. All monitoring will cease when it is determined that the monitored conversation is not criminal in nature.    Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that target subjects or any of their confederates, when identified, are participants in the conversation, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature.  If an interception is minimized, monitoring agents shall spot check to insure that the conversation has not turned to criminal matters.

51

108.   It is requested that the order provide that, if necessary, translators be authorized to assist in conducting this wire surveillance and to receive disclosure of intercepted communication.   Certain subjects of this investigation may communicate with each other in Spanish. It is therefore necessary to secure the services of translators in order to assist the agents in monitoring the wire surveillance and translating the intercepted communications.   All such translators will be under contract to the DEA and will be directly supervised by the DEA and/or deputized law enforcement officers.   It is further requested, pursuant to Section 2518(5), Title 18, United States Code, that in the event the intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, that minimization may be accomplished as soon as practicable after such interception.

### AUTHORIZATION REQUEST

109.   As described above, **TARGET TELEPHONE #5** is crucial to the drug transportation/distribution activities of the Bobby FAIRCHILD Drug Trafficking Organization. Bobby FAIRCHILD is believed to use (270) 994-3072 **(TARGET TELEPHONE #5)** to coordinate the pick up and transportation schemes of drug and currency shipments arranged by Bobby FAIRCHILD and other individuals not yet identified.

110.   Based on the foregoing, it is my opinion that the interception of communications occurring over **TARGET TELEPHONE #5**, as specified above, is essential to uncover the full scope of the illegal activity described herein.

111.   Inasmuch as the illegal operation described herein is a continuing conspiracy involving persons as yet unidentified and unknown, it is requested that it be ordered, as more fully stated in the accompanying application, that authorization to intercept not terminate when

52

the sought wire communications are first obtained, but continue until interception fully reveals the objectives set forth above, or for a period of thirty (30) days, whichever is earlier. The 30-day period shall be measured from the date on which a law enforcement agent first begins to conduct the interception under the court order or ten days after the order is entered, whichever is earlier.

112.    Pursuant to the provisions of Title 18, United States Code, Sections 2518 (4), it is requested that it be ordered that AT&T Wireless, the service provider for **TARGET TELEPHONE #5,** furnish the technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with such services as those providers accord the person whose communications are to be intercepted (including all dial digits, including all incoming and outgoing calls pen register information, and audio interception capability whether the cellular telephone is in roaming mode or otherwise). The assistance of this provider is required to accomplish the objectives of the requested interceptions. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

113.    Because the need for contemporaneous information concerning the intercepted communications is especially important in the present investigation, it is further requested that AT&T Wireless, and any other service providers of intercepted telephone calls be ordered to provide originating and terminating cell site information for the intercepted wire communications, by permitting the DEA to access such information. It is requested that this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order

to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others.

Cory Hallum, Special Agent
United States Drug Enforcement Administration

Subscribed and sworn to before me this 2nd day of December, 2008.

JAMES H. PAYNE
UNITED STATES DISTRICT JUDGE

54